**FILED**

**JUNE 30, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

RECEIVED

Jun 2 2008
JUN   2 2008 *mb*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Randall Re,

      Plaintiff,

vs.

Rosemarie Re, C.P.A.

      Defendant,

Donna M. Roberts, C.P.A., Trustee,

      Defendant,

Patricia deRosset, Esq. A.S.A.,

      Defendant,

George J. Vosicky, Esq., Trustee,

      Defendant,

Connie Gessner, Esq., Guardian Ad Litem,

      Defendant,

08CV 3175
JUDGE GOTTSCHALL
MAGISTRATE JUDGE DENLOW

Civil Complaint pursuant
to Title 28 U.S.C. §
1332 (a)(1) Diversity
of citizenship

---

## COMPLAINT

**Comes now,** Randall Re acting ro se and respectfully submits the following of his complaint:

## PRELIMINARY STATEMENT

This civil action arises from the inappropriate actions of all the Defendants in regards to the funds of the three Re children's individual trust accounts, (DECLARATION OF TRUST), referred to in this complaint as the "college trusts". These three trusts were established in 1994, intended for the sole purpose of college education for each of Re's children, exhibit "A".

Additionally, in 2004, an Illinois State 503(g) trust was setup for Re children's, child support, medical expenses and life insurance on the Plaintiff. See exhibit "G". (RE CHILDREN'S TRUST AGREEMENT), referred to in this complaint as the 503(g) trust.

Whereby, because of the Defendants' gross negligence, lack of fiduciary commitment, reckless disregard and willful default, the "college trusts" for the Re children have dwindled away to the point that the trusts are now empty.

## JURISDICTION AND AUTHORITY

The District Court is the proper authority, and jurisdiction for this complaint under U.S.C. 28 § 1332 Diversity of Citizenship; amount in controversy; cost; (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or valve of $75,000, exclusive of interest and costs, and is between —— (1) Citizens of different States;

## VENUE

The proper venue for this complaint is the United States District Court for the Northern District of Illinois Eastern Division because the events and negligent acts giving rise to Plaintiff's claim occurred originated in Illinois and continued in the State of Florida.  This venue is proper under 28 U.S.C. § 1391 Venue generally, (a).

## PARTIES

Plaintiff: Randall Re is a citizen of the United States of America and is a federal inmate incarcerated at the Federal Correctional Institution, P.O. BOX 1000, Milan, Michigan 48160. Plaintiff was a federal inmate confined by the B.O.P., from November 2002 to present.

Defendant: Rosemarie A. Re, C.P.A., ex-wife of Plaintiff Randall Re and the mother of the three Re children, Amanda Marie Re, Randall George Re II, and Russell Garrett Re.  Resides at 1532 US Highway 41, Bypass South, Venice, Florida 34293-1032.

Defendant: Donna Roberts, C.P.A.; 1515 South Tamiami Trail, Suite 4, Venice, Florida 34285;  currently the trustee for all the trusts for the Re children.  The "college trusts", (DECLARATION OF TRUST) and the 503(g) trust, (RE CHILDREN'S TRUST AGREEMENT).

Defendant:  Patricia deRosset, Esquire, Assistant State's Attorney from DuPage County State's Attorneys Office,  Attorney No. 50000, at 505 North County Farm Road, Wheaton, Illinois 60187. Defendant Patricia deRosset, has the duty to oversee the children's best interest and supervise the expenditures in regards to the Re children's trusts.  Additionally, aided and advised on the formation and amounts of the Illinois 503(g).

Defendant:  George J. Vosicky, the former trustee, attorney at law, and office of the Court.  Defendant Vosicky was the trustee from it's conception to approximately July 2003. Address:  111 North Ottawa Street, Joliet, Illinois 60431.

Defendant:  Connie Gessner, the Re children's Guardian Ad Litem, attorney at law and a office of the Court, I.D. 29243; 373 South County Farm Road, Wheaton, Illinois 60187.

## FACTUAL ALLEGATIONS

There are three trusts, "DECLARATION OF TRUST", one for each Re child, "AMANDA MARIE RE", RANDALL GEORGE RE, II", and "RUSSELL GARRETT RE". All three trusts are worded the same, other than their name. See exhibit "A", which is for "RUSSELL GARRETT RE TRUST". These three separate trusts were each established in December of 1994, by the Plaintiff Randall Re and ex-wife, Defendant Rosemarie Re, the children's parents.

The parents were the decision makers of this instrument. The sole intention and objective of this legal instrument was for the Re children's college education.

The terminology of the trusts may reflect other language or usage, but the intendment and mission was unequivocally for the children's "college education". Defendant Rosemarie Re's motion from 12-13-02, supports and concurs with this belief, see exhibit "B", page 2, item 16 and 17. Page 3 of this motion reflects her "Verification By Certification", which states, "statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies, as aforesaid, the belief that the same are true." dated 12-13-02 by Defendant Rosemarie A. Re.

Defendant George J. Vosicky, was the trustee from December of 1994 to on or about July 2003. The three Re children's trusts had jointly owned a warehouse in Woodridge, Illinois. Defendant George Vosicky and Rosemarie Re collaborated together, without

Plaintiff Randall Re's knowledge to sell the children's warehouse, quietly and quickly, approximately $50,000 below market value. They needed to liquefy the children's asset of the warehouse, so Defendant Rosemarie Re could pay her excessive bills from the Re's divorce using funds from the warehouse sale. After the sale of the warehouse, each "college trust" had approximately $50,000.

While living in Illinois, in 1997, Defendant Rosemarie Re started divorce proceeding in DuPage County Illinois. In 2000 the divorce was granted. The Court should know that Defendant George Vosicky and Rosemarie Re were extremely close friends. Defendant Vosicky was recommended by the Defendant Rosemarie Re to be the trustee. Currently, RANDALL RE, II and RUSSELL RE's trust should have approximately $50,000.00 in each trust. AMANDA RE's trust should also have $50,000, however, Amanda Re did attend college, but the funds were withdrawn against court orders, as this complaint will reveal.

Defendant George Vosicky went along with Defendant Rosemarie Re's plan either knowingly or unknowingly, but with reckless disregard of his fiduciary commitment as the trustee and as an attorney at law and officer of the Court. Defendant George Vosicky relinquished his duties as trustee improperly to Defendant Donna Roberts, C.P.A., the new trustee, without any knowledge or approval by Plaintiff Randall Re, the father. Both Defendants took liberties and improprieties against the rules of the "DECLARATION OF TRUST", Article V, Section 5.2 Successor Trustee. NBD Bank, Trust Division should have been appointed trustee, or

a bank or trust company or individual, "it shall be authorized
by law to administer trusts, having a combined capital and
surplus of $10,000,000." See exhibit "A", page 8.

The Plaintiff Randall Re was incarcerated in November
of 2002. Since the conception of the "college trusts" in 1994 till
sometime in or about 2003, no funds were removed. However,
Defendant George Vosicky, trustee, approved medical expenses to
be paid out, from 1997 to 2000 for all three children in the
approximate amount of $26,000 combined. This was done in 2003,
so the Plaintiff Randall Re would not be able to object to the
pay out. However, the payment of these alleged medical bills
went directly against three DuPage County Court orders. One
stating, "May Not Invade Children's Trust", exhibit "C", dated
October 2, 2001 by Judge Elsner and written by Defendant Rosemarie
Re. A second Court order, exhibit "D", page 2, dated February 16,
2004 by Judge Equi stating, "since there was no evidence of
medical bills incurred after the entry of judgment in 2002, there
can be no order to pay them." Exhibit "E", dated May 6, 2004,
"Concerning medical bills incurred after entry of the "Reconsidered"
Judgment of March 17, 2000, there can be no order to pay them."

At all times Defendant Patricia deRosset, ESQ of the
Office of the DuPage State's Attorney  in DuPage County was not
only aware of these court orders, but was present and on the
mailing list of two of the court orders. See exhibits "D" and
"E". Defendant Patricia deRosset's responsibility was to represent
the children's welfare and their best interest. At no time has

(6)

Defendant deRosset ever returned a response to Plaintiff Randall
Re's letters, requesting a record of child support payment.  See
exhibit "F", two letters from Plaintiff Randall Re.


Defendant Connie Gessner, attorney    and the children's
Guardian Ad Litem , was paid to represent Re's children on their
behalf and for their best interests.  Defendant Connie Gessner was
not always the Re children's Guardian Ad Litem, only when Defendant
Rosemarie Re needed her.  Defendant Connie Gessner had no
communication with the Re children's father, Plaintiff Randall Re.
Defendant Connie Gessner turned a blind eye to the Re children's
"college trust" fund mismanagement and activities.  There was total
disregard to her fiduciary as an Guardian Ad Litem, as an attorney
of law, and as an officer of the Court.


In addition to the three "college trusts", exhibit "A",
another single trust was established for child support, medical
bills and for Plaintiff Randall Re's term life insurance policy.
This trust is an Illinois 503(g) trust agreement which was
established in May of 2004, pursuant to a court order entered in
the Circuit Court of the Eighteenth Judicial Circuit, Dupage County,
Wheaton, Illinois case of **In Re the Marriage of Rosemarie Re vs
Randall Re**, Case No. 97 D 285, see exhibit "G", "RE CHILDREN'S
TRUST AGREEMENT", referred to as the 503(g) trust.  This trust
does not include Re's daughter, Amanda Re due to the fact by this
date, Amanda Re had turned 18 years of age.

This 503(g) trust states, "The purpose of this Trust is to provide for the support of Russell Garrett Re and Randall George Re...Such support shall include expenditures for:

1. Child support as ordered by the Court;
2. Major medical insurance premiums from January 30, 2002 to August 22, 2009;
3. Premium for a term life insurance policy insuring the life of their father Randall Re through August 22, 2009."

Plaintiff Randall Re funded this 503(g) trust in the approximate amount of $46,000, exhibit "G", page 6. Child support was calculated by Defendants Donna Roberts, C.P.A., trustee and Patricia deRosset, States attorney and Terry O'Donnell, Plaintiff Randall Re's attorney. Defendant Patricia deRosset, A.S.A. was to arrange all the payments of child support with Defendant Donna Roberts. the trustee, from the 503(g) trust.

Per the 503(g) trust, the amount of $33,800 was set aside for child support, to be paid, May 2004 to August 2009, exhibit "G", page 6. Defendants Rosemarie Re and Patricia deRosset misinformed the Court about Russell Re's age. Russell Garrett Re turns 18 years of age on August 22, 2008 not 2009, therefore the child support and medical expenses should stop on Russell Re's eighteen birthday not one year later.

Per the 503(g) trust, exhibit "G", page 6, the amount of $2,302 was set aside for Plaintiff Randall Re's term life insurance policy. Plaintiff Randall Re has never seen any insurance policy and has not noted any payment to any insurance company for any term life policy in any accounting.

(8)

Per the 503(g) trust, exhibit "G", page 6, the amount of $10,322 was set aside for medical insurance premiums; specifically, that Defendant Rosemarie Re would not incur any medical expenses.

As of 2006, all letters requesting an accounting of the 503(g) trust were to no avail. On January 20, 2006, Plaintiff Randall Re received a court order for an accounting of all trusts, the "college trusts" and the 503(g). See exhibit "H" for court order. The "college trusts" accounting exhibits are as follows: exhibit "I" is Amanda Re's, exhibit "J" is Randall Re,II's, and exhibit "K" is Russell Re's. The 503(g) trust accounting is exhibit "L". The accounting of the three "college trust" funds reflect inappropriate disbursements in conflict with DuPage County Court orders and irregularities against the regulation of the trust agreement. Such as:

1. All three college trust funds have medical expenses paid from 1997 to 2000, "approval of prior trustee George Vosicky", directly against three separate Court orders. See page 4 of December 31, 2003, accounting exhibit of each "college trust", "I", "J" and "K", highlighted. Defendant Donna Roberts, the current trustee was not allowed to pay these expenditures, per the court orders, exhibits "C", "D", and "E", from the "college trusts". Defendant Roberts paid these expenditures per order of Defendant George Vosicky's prior approval. Please note Defendant Rosemarie Re's close friend was Defendant George Vosicky, the prior trustee.

2. The Court will note throughout the accounting of the "college trusts," exhibits "I", "J", and "K", there are medical expenses which are suppose to be paid out of the 503(g) trust, see exhibit "G".

3. The accounting of the "college trusts" reflect improper
disbursements in regards to child support.  The Child
support payments should be withdrawn from the 503(g)
trust, see exhibit "G".  Not only was child support
taken improperly, but the payments were doubled and
tripled in some instances.  The child support payments
are to be $700 per month from 5/19/04 ending 1/19/05,
then $500 per month from 2/19/05 ending 8/22/09, see
exhibit "G", page 7 and exhibit "M", page 2.

The "college trusts", exhibits "I", "J" and "K", Amanda,
Randall II, and Russell, respectfully, on page 3 of the
December 31, 2003, each exhibit reflects the same dated
child support payment per child, triple payments of
$400.

On pages 4 of exhibits "J" and "K", October and November
of 2003, again on pages 3 and 4 of December 31, 2004.
All double payments of $500 per child per month.

Donna Roberts, C.P.A., trustee, was made aware of these

discrepancies in a letter from Plaintiff Randall Re, dated September

4, 2006, exhibit "N".

Other irregularities and inappropriate disbursements,

which are highlighted, are:  the payment of an apartment, all

furnishings and expenses related for an apartment; payment for a

vehicle and all related expenses, for Randall Re II, a minor and

still attending high school at the time.

Amanda Re did attend college, which was the conceived

and intended purpose of these "college trusts" by the "decision

makers", her parents.  However, the expenditures on all medical

expenses or unrelated expenses, directly related to "college

education" should not be allowed and returned.

(10)

With the Court's further review of the accounting, it will note a total collapse and plundering of the Re children's "college trust" funds, in less than a three year period, from 2003 to 2006. The Plaintiff Randall Re has been incarcerated since November 2002. The accounting will reveal, on it's face value, a complete gross negligence and total reckless disregard of the appropriateness of all the disbursements of Randall II and Russell Re's "college trust" funds, and a vast majority of Amanda Re's "college trust" fund.

There was a general pattern and practice of showing intend to manipulate the figures , regulations of the trust documents, and facts in the aspects of these "college trust" fund's accounting.

## AMOUNT OF CLAIM

Plaintiff Randall Re seeks compensatory damages in the amount of $175,000 to $200,000 to be paid jointly by the defendants and punitive damages of $25,000 from each defendant severable.

Dated: _5-19-08_                      Respectfully Submitted

_Randall Re_

Randall Re
Reg. No. 14617-424
FCI-Milan
P.O. BOX 1000
Milan, Michigan 48160

(11)

## CERTIFICATE OF SERVICE

I, Plaintiff, Randall Re, certify I have mailed a copy of the forgoing instrument on this _19_ day of _MAY_, 2008, by placing same in the U.S. Mail box located here in FCI-Milan, Milan, Michigan 48160, to:


Rosemarie A. Re, C.P.A.
1532 US Highway 41
Bypass South
Venice, Florida 34293-1032

Donna Roberts, C.P.A.
1515 South Tamiami Trail
Suite 4
Venice, Florida 34285

DuPage County State's Attorneys Office

Attn:    Assistant State's Attorney
         Patricia deRosset, Esq.
         I.D. 50000

505 North County Farm Road
Wheaton, Illinois 60187

George J. Vosicky, Esq.
111 North Ottawa Street
Joliet, Illinois 60431

Connie Gessner, Esq.
373 South County Farm Road
Wheaton, Illinois 60187


Dated:   _5-19-08_                          _Randall Re_
                                            Randall Re

# DECLARATION OF TRUST

## RUSSELL GARRETT RE TRUST

We, RANDALL GEORGE RE and ROSEMARIE ANN RE, transfer to, GEORGE J. VOSICKY, of Lisle, Illinois, as trustee (collectively referred to as the trustee), the property described in the attached schedule. That property and any other property that may be received by the trustee shall be held and disposed of as follows:

### ARTICLE I

### Nature of Agreement

1.1    **Irrevocable Trusts.**  This instrument and any trust created hereunder are irrevocable and unamendable.

1.2    **Additions to Trust.**  I or any other person may add property to the trust from time to time by lifetime or testamentary gifts.

### ARTICLE II

### Disposition of Trust Property

The trustee shall hold and dispose of the trust property as follows:

2.1    **During Russell's Lifetime.**  During the life of **RUSSELL GARRETT RE** ("Russell"), the trustee may pay to or use for the benefit of Russell so much or all of the income and principal of his trust as the trustee from time to time determines to be required or desirable for his support, care, education, comfort and welfare. Any income not so paid shall be added to principal.

2.2    **Right of Withdrawal.**  At such time as Russell attains the age of twenty-one years, the trustee shall notify him that he has the right to withdraw any portion or all of the trust property, as then constituted, during the period beginning with his twenty-first birthday and ending on the sixtieth day after the last to occur of his twenty-first birthday and the date of such notice. Failure to give or receive such notice shall not prevent Russell from exercising his right to withdraw pursuant to this Section 2.2. To the extent Russell does not exercise his right to

$Ex$ "$A$"

withdraw the trust property, the trust shall continue upon the same terms and conditions as specified in Section 2.1. After Russell attains the age of twenty-five years he may from time to time withdraw up to, and his total aggregate withdrawals may not exceed, one-third of the value of the trust as constituted on his twenty-fifth birthday. After attaining the age of thirty years, Russell may from time to time withdraw any portion or all of the trust property.

**2.3** **In the Event of Russell's Death.** Upon Russell's death the trustee shall distribute his trust, as then constituted, to, or in trust for the benefit of, such person or persons, or Russell's own estate, upon such conditions and estates, with such powers, in such manner and at such time or times as he appoints and directs by will specifically referring to this power of appointment. To the extent he does not effectively exercise his power of appointment, upon his death the trustee shall distribute his trust to his then living descendants, *per stirpes*, or if there are none, to my then living descendants, *per stirpes*, or if there are none, to those persons who would have been entitled to receive my personal property under the laws of Illinois in effect at the date of this instrument had I died intestate with no surviving spouse immediately after Russell's death, and in the proportions that would be determined upon those laws.

**2.4** **Retention in Trust for Certain Beneficiaries.** If any beneficiary to whom the trustee is directed in a preceding provision to distribute any share of trust principal is under the age of twenty-one years when the distribution is to be made, and if the trustee is not otherwise directed in this instrument to hold such share in trust, the beneficiary's share shall vest in interest indefeasibly, but the trustee may continue to hold it as a separate trust for such period of time as the trustee deems advisable, but not after the time the beneficiary reaches twenty-one years of age. In the meantime the trustee may use for the benefit of the beneficiary so much of the income and principal as the trustee may determine to be required for the beneficiary's support, care, education, comfort and welfare, adding any income not so paid to principal.

# ARTICLE III

## Construction and Administration

**3.1** **Disposition of Accrued and Undistributed Income.** Unless otherwise specifically provided in this instrument, upon the death of any beneficiary any accrued or undistributed income shall be held and accounted for, or distributed, in the same manner as if it had been received and accrued after the beneficiary's death.

**3.2** **Discretionary Acts.** Whenever the trustee "may" perform a certain act, the trustee may or may not perform that act in the trustee's sole discretion, guided by any applicable

standards in this instrument. In determining whether and to what extent to make discretionary payments of income or principal to or for the benefit of any beneficiary, the trustee shall take into account any other property or sources of income or support of the beneficiary known to the trustee. My primary concern in establishing the trust hereunder is for the benefit of the current beneficiary, and the trustee need not consider the interests of any remainder beneficiaries in making distributions to or for the benefit of the current beneficiary and may, unless otherwise provided, exhaust the principal of a trust. Notwithstanding any provision to the contrary herein, the exercise of discretion with respect to payments of income and principal may not be delegated by the trustee.

3.3    **Spendthrift Provision.** No interest under this instrument shall be transferable or assignable by any beneficiary or be subject during his life to the claims of his creditors, including, without limitation, any private, local, state or federal government agency which may have provided services for any beneficiary or to any claim for alimony, maintenance or support of any former spouse from whom he is divorced or of any spouse from whom he is legally separated. Any right of withdrawal granted under this instrument shall be a privilege which may be exercised only voluntarily and shall not include an involuntary exercise. This paragraph shall not restrict the exercise of any power of appointment.

3.4    **Trustee's Compensation.** Any trustee shall be entitled to reasonable compensation for services in administering and distributing the trust property, and to reimbursement for expenses.

3.5    **Waiver of Bond and Court Supervision.** No trustee shall be required to give any bond as trustee; to qualify before, be appointed by or in the absence of breach of trust to account to any court; or to obtain the order or approval of any court in the exercise of any power or discretion.

3.6    **Payments to Trustee.** No person paying money or delivering any property to any trustee need see to its application.

3.7    **Reliance by Trustee.** The trustee may rely upon any notice, certificate, affidavit, letter, telegram or other paper or document which the trustee believes to be genuine, or upon any evidence deemed by the trustee to be sufficient, in making any payment or distribution. The trustee shall incur no liability for any payment or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in the trust.

3.8   Definitions and Certain Rules of Construction.

(a)   **Headings.** The headings used herein are for convenience only, are not part of the article, section or subsection to which they relate and are not to be used in construing the legal intent of this instrument.

(b)   **Gender and Number.**  Whenever the context requires or permits, the gender of a word, whether masculine, feminine or neuter, shall be interchangeable, and words used in a plural or collective sense shall include the singular and vice versa.

(c)   **Hereunder.**  Whenever the word "hereunder" is used in this instrument, Oit shall refer to the entire instrument, not merely to the article, section or subsection in which it appears.

3.9   **Accountings.**  Upon the written request of the beneficiary of any trust, the trustee shall furnish an annual accounting showing the receipts, disbursements and inventory of that trust.

3.10   **Controlling Law.**  The administration of any trust created by this instrument and the dispositions made in each such trust shall be construed and regulated and their validity and effect shall be determined by the law of Illinois.

# ARTICLE IV

## Trustee's Powers

Unless otherwise provided in this instrument, the trustee of each trust hereunder shall have the following powers, and any others that may be granted by law, with respect to each trust, without application to any court:

4.1   **Retention of Property.**  To retain any property or undivided interests in property received from any source, regardless of any risk, nonproductivity or lack of diversification;

4.2   **Investment.**  To invest and reinvest the trust estate in bonds, notes, stocks of corporations regardless of class, real estate or any interest in real estate, common trust funds, interests in trusts or in any other property or undivided interests in property, wherever located; to purchase and exercise call option contracts, without being limited by any statute or rule of law concerning investments by trustees;

-4-

**4.3    Sale of Trust Property.** To sell any trust property (which shall include, without limitation, any life estate, term of years, remainder or reversion therein) for cash or on credit, at public or private sales; to exchange any trust property for other property; to grant options to purchase or acquire any trust property; to determine the prices and terms of sales, exchanges and options; to sell (write) covered call option contracts;

**4.4    Management of Real Property.** To operate, maintain, repair, rehabilitate, alter, improve or remove any improvements on real estate; to make leases and subleases for terms of any length, even though the terms may extend beyond the termination of the trust; to subdivide or partition real estate; to grant easements, give consents and make contracts relating to real estate or its use; to release or dedicate any interest in real estate;

**4.5    Abandonment.** To abandon any property, real or personal, which the trustee shall deem to be worthless or not of sufficient value to warrant keeping, protecting or maintaining; to abstain from the payment of installments due on purchase contracts or mortgages, taxes, water rents, assessments, repairs and maintenance with respect to any such property; to permit any such property to be lost by foreclosure, tax sale or other proceedings; to convey any such property for a nominal consideration or without consideration; to permit the expiration of any renewal, sale, exchange or purchase option with respect to any property or lease thereof;

**4.6    Borrowing.** To borrow money for any purpose, either from the trustee or the banking department of any corporate trustee or from others; to mortgage or pledge any trust property; to guarantee the loans of any entity in which the trust has an interest;

**4.7    Employment of Professional Advisors.** To employ attorneys, paralegals, accountants, auditors, appraisers, investment advisors, depositaries and agents, with or without discretionary powers, to delegate to them such powers and grant them such powers of attorney as the trustee considers desirable, and to compensate them for their services in accordance with their usual and customary hourly rates (including any separate charge for paralegal services rendered by any law firm) or, if applicable, any published fee schedule, so long as the trustee considers such compensation to be reasonable and even if fees may be payable to the same person or organization in more than one capacity including, without limitation, as a fiduciary acting pursuant to this instrument;

**4.8    Accounts.** To open and maintain checking, savings or brokerage accounts; to open and maintain safety deposit boxes and to appoint one or more agents to have access thereto and to revoke any such appointment; to keep any property in bearer form or in the name of a trustee or a nominee, with or without disclosure of any fiduciary relationship;

-5-

**4.9   Miscellaneous Administrative Powers.**  To take any action with respect to conserving or realizing upon the value of any trust property and with respect to foreclosures, reorganizations or other changes affecting the trust property; to collect, pay, contest, compromise or abandon demands of or against the trust estate wherever situated; to execute contracts, notes, conveyances and other instruments, including instruments containing covenants, representations and warranties binding upon and creating a charge against the trust estate and containing provisions excluding personal liability;

**4.10   Receipt of Additional Property.**  To receive additional property from any source and add it to the trust estate or to refuse to accept any such property;

**4.11   Transactions with Other Fiduciaries.**  To enter into any transaction authorized by this article with trustees, executors or administrators of other trusts or estates in which any beneficiary has any interest, even though any such trustee or representative is also trustee under this instrument; in any such transaction, to purchase property or make loans on notes secured by property even though similar or identical property constitutes all or a large proportion of the balance of the trust estate, and to retain any such property or note with the same freedom as if it had been an original part of the trust estate;

**4.12   Distribution, Division and Allocation of Trust Property.**  To make any distribution or division of the trust property in cash or in kind or both; to select assets to be sold as necessary to satisfy required cash payments and distributions, without being required to minimize the tax consequences thereof; to purchase an annuity contract or other property for the benefit of a beneficiary to whom a distribution is to be made; to allocate in accordance with values determined by the trustee different kinds or disproportionate shares of property or undivided interests in property among the beneficiaries or trusts, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for federal income tax purposes; to loan money to a beneficiary, or guarantee a loan from a third party to a beneficiary, upon such terms and conditions, and with such security, as the trustee determines to be appropriate;

**4.13   Merger of Trusts.**  To commingle or merge two or more trusts, one or more of which is created under this instrument and the other or others of which are created by me or others under this or other instruments for the primary benefit of the same person or persons and the terms and conditions of which are substantially the same;

**4.14   Change of Situs.**  To transfer the assets of any trust to another situs and to appoint as a special trustee any person or corporation authorized by law to administer trusts such as those created herein and to remove any special trustee and reappoint the original trustee;

-6-

**4.15    Principal and Income.** To determine in accordance with the Principal and Income Act in effect at the time of the determination of the jurisdiction the laws of which then control the administration of the trust, or in an equitable manner in those cases not then clearly covered by that law, the allocation or apportionment of all receipts and disbursements between income and principal, provided, however, that the trustee shall not establish a reserve, or otherwise make an allowance, for the depreciation of real estate;

**4.16    Life Insurance.** To purchase insurance policies and annuity contracts on the life of any person; to pay the premiums and exercise all the powers of an owner of such policies or contracts; to sell, assign or pledge a policy or contract; to change the beneficiary designation of any such policy; to collect the net proceeds of any policy or contract payable to the trustee; to engage in litigation to enforce payment of any policy, but only with indemnification satisfactory to the trustee for any resulting expense (the insurer or issuer under each such policy or contract may make payments to the trustee or act solely upon the instructions of the trustee, and in every respect deal solely with the trustee as the absolute owner of said policy or contract. The payment of proceeds to the trustee and the receipt of the trustee shall be in full discharge of the liability of any insurance company, which need not take notice of this instrument or see to the application of any payment);

**4.17    Tax and Other Elections.** To exercise any election under any tax law as the trustee deems advisable, with no adjustment to be made between principal and income or in the relative interests of the beneficiaries to compensate for the effect of any such election made by any fiduciary hereunder;

**4.18    Business Interests.** To retain or invest in any business interest, as shareholder, security holder, creditor, partner, proprietor or otherwise, even though it may constitute all or a large portion of the trust estate; to participate in the management and conduct of any business to the same extent as could an individual owner of any business; to vote the stock of any business interest and to determine all questions of policy; to execute partnership, shareholder or other organizational agreements and amendments; to participate in any incorporation, reorganization, merger, consolidation, recapitalization, liquidation, or dissolution of any business or any change in its nature; to invest additional capital in any business by subscribing to or purchasing additional stock or securities of any business, or by making secured, unsecured or subordinated loans to any business with trust funds; to elect or employ as directors, officers, employees or agents of any business such persons (including a beneficiary, a trustee or a director, officer or agent of a trustee) as are necessary and at such compensation as is reasonable; to rely upon the reports of certified public accountants as to the operations and financial conditions of any business, without independent investigation and to sell or liquidate any interest in any business; to retain and continue any business interest without liability for any loss and without application to any court;

-7-

**4.19    Other Powers.** To perform all other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

**4.20    Scope of Trustee's Powers; Exculpation.** The powers and discretion granted to the trustee pursuant to this instrument may be exercised for a reasonable period of time after the termination of any trust, but only for so long as no rule of law relating to perpetuities would be violated, and may be exercised either within or without the United States.  No trustee shall be liable for any loss, liability, expense or damage to the trust property occasioned by the trustee's acts or omissions made in good faith (including acts or omissions in reliance on professional advisors) and in any event the trustee shall be liable only for willful default, wrongdoing or gross negligence, but not for honest errors of judgment.  So long as the trustee shows good faith in the exercise of the powers and discretions hereunder, the trustee's decisions shall not be subject to question by any beneficiary hereunder, nor shall the trustee be liable to any such beneficiary, even though one or more of the beneficiaries may be adversely affected.  The actions of the trustee shall be binding on all persons.

## ARTICLE V

### Trustees

**5.1    Resignation.** The trustee may resign by giving written notice, specifying the effective date of the resignation, to the successor trustee.  Any other trustee may resign by giving written notice, specifying the effective date of the resignation, to the beneficiaries to whom the trustee is then to or may distribute income, to any co-trustees and to any designated successor trustee.

**5.2    Successor Trustee.**

(a)    **Successor.** If GEORGE J. VOSICKY is unable to act as trustee, I appoint **NBD BANK, TRUST DIVISION**, located in Park Ridge, Illinois, as trustee in his place (collectively referred to as the trustee).  If **NBD BANK, TRUST DIVISION**, or any successor trustee appointed in its place is unable to act as trustee, a successor trustee shall be appointed by an instrument signed by a majority in number of the beneficiaries to whom the trustee is then to or may distribute the income.  Each successor so appointed shall be an individual or a bank or trust company, and if a bank or trust company, it shall be authorized by law to administer trusts, having a combined capital and surplus of $10,000,000.  The grantors, their descendants, or anyone who is dependent upon a grantor or descendant, may not be appointed a successor trustee.

-8-

**5.3.    Delegation to Co-Trustee.** Any trustee may at any time by a signed instrument delivered to the remaining trustee delegate to that trustee all powers and discretion under this instrument, including the power to convey real property, either for a specified time, until the delegation is revoked by a similar instrument, or irrevocably. Any person dealing with a trustee having received such delegation may rely without inquiry upon the trustee's certificate with respect to any delegation.

**5.4    Trust Property in Foreign Jurisdiction.** If at any time any trust property is situated in a jurisdiction in which any trustee is unable or unwilling to act, any trustee able or willing to act or, if none, such person or corporation as may be appointed by the trustee or trustees herein appointed (the "principal trustee") shall act as trustee with respect to that property, and such trustee and every successor trustee so appointed shall exercise the powers granted by this instrument only with the approval of the principal trustee. The net income from that property and any net proceeds of its sale shall be paid over to the principal trustee.

**5.5    Release and Discharge of Trustee.** The approval of the accounts of any trustee, in an instrument signed by a majority in number of the beneficiaries to whom the trustee is to or may distribute the income at the time of approval, shall be a complete release and discharge of the trustee with respect to the administration of the trust property for the period covered by such accounts, binding upon all persons.

**5.6    No Liability for Acts of Predecessor Trustee.** No successor trustee shall be personally liable for any act or omission of any predecessor trustee. Any successor trustee may accept without examination or review the accounts rendered and the property delivered by or for a predecessor trustee without incurring any liability or responsibility. Any successor trustee shall have all the title, powers and discretion of the trustee succeeded, without the necessity of any conveyance or transfer.

**5.7    Beneficiary Under Disability.** The guardian or conservator of the estate of a beneficiary under legal disability, or the parents or surviving parent or guardian of the person of a minor beneficiary for whose estate no guardian has been appointed, may, in carrying out the provisions of this article, act and receive notice for the beneficiary and sign any instrument for him.

**5.8    Inability to Act.** The term "unable to act" used with respect to any fiduciary shall mean the inability of that fiduciary to act, whether prior to or subsequent to assuming office, by reason of death, resignation, physical or mental incompetence, refusal to act, failure to qualify under the laws of the appropriate jurisdiction, removal from office by a court of competent jurisdiction or, if so provided, removal by the terms of this instrument.

-9-

5.9   **Corporate Trustee.**  Any corporate trustee shall be the custodian of the trust property and of the books and records of the trustees.  Any corporate trustee may perform for the trustees all acts necessary for the acquisition and transfer of personal property and money, including the signing and endorsement of checks, receipts, stock certificates and other instruments, and no person need inquire into the propriety of any such act.

This instrument is signed on this 29th day of December, 1994    .

GRANTORS:

_____
ROSEMARIE ANN RE

_____
RANDALL GEORGE RE

ACCEPTED BY TRUSTEE:

_____
GEORGE J. VOSICKY, Trustee

-10-

## SCHEDULE

### RUSSELL GARRETT RE TRUST

December 29, 1994                    $10,000

Dated:        December 29, 1994

_____          _____
ROSEMARIE ANN RE                  RANDALL GEORGE RE

                                  _____
                                  GEORGE J. VOSICKY, Trustee

-11-

STATE OF ILLINOIS    )
                   )   SS.
COUNTY OF COOK    )

      I, the undersigned notary public for this County and State, certify that **RANDALL GEORGE RE, ROSEMARIE ANN RE**, and **GEORGE J. VOSICKY**, personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed and delivered this instrument as their free and voluntary act, for the uses and purposes therein set forth.

      GIVEN under my hand and official seal this 29th day of December, 1994.

                                  _Sandra L Eyman_
                                      Notary Public

This instrument prepared by:

**ROBERT R. EKROTH, ESQ.**
**EKROTH & OSBORNE, LTD.**
15 Salt Creek Lane, Suite 122
Hinsdale, Illinois 60521
(708) 655-1201

> OFFICIAL SEAL
> SANDRA L. EYMAN
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 7-6-98

-12-

IN RE THE MARRIAGE OF:

ROSEMARIE RE,
                    Plaintiff,                        Case No. 97 D 285
          and
RANDALL RE,
                    Defendant.

---

## PETITION FOR CONTRIBUTION TO CHILD'S POST-HIGH SCHOOL EDUCATIONAL EXPENSES PURSUANT TO SECTION 5/513 OF THE ILLINOIS MARRIAGE AND DISSOLUTION OF MARRIAGE ACT

The Plaintiff, Rosemarie Re, in support of her Petition for Contribution to Child's Post-High School Educational Expenses Pursuant to Section 5/513 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513) (West 2002) states:

1.  The parties were divorced pursuant to a Judgment for Dissolution of Marriage entered December 15, 1999.

2.  On March 16, 2000, a Reconsidered Judgment for Dissolution of Marriage-Grounds, Property, Maintenance and Child Support was entered.

3.  On February 14, 2002, a Final Judgment Order for Dissolution of Marriage was entered modifying only the marital property, debts and maintenance portions of the original and Reconsidered Judgments.

4.  Three (3) children were born to the parties during the marriage, namely: Amanda M. Re, born March 14, 1985, presently seventeen (17) years old; Randall G. Re, II, born January 20, 1987, presently fifteen (15) years old; and Russell G. Re, born August 22, 1990, presently twelve (12) years old.

5.  The Judgment entered December 15, 1999 reserved the issue of payment of college expenses.

6.  The Reconsidered Judgment entered March 16, 2000 states in pertinent part:

    > The question of each party's obligation for payment of college-related expenses for the children is reserved, pursuant to Section 513.

    A copy of the relevant portion of the Judgment is attached hereto as Exhibit A.

7.  Amanda will be completing high school in June 2003.

8.  Amanda is an honor-roll student.

9.  Amanda has been accepted by the University of Southern Florida for the Fall Semester 2003.

- 1 -                                                              12/13/02



Exhibit "B"

10. The tuition at the University of Southern Florida is expected to be $2,760.00 per year, or $92.00 per credit hour.

11. Amanda is required by the University to reside on campus for her freshman and sophomore years.

12. The dormitory cost for the 2003-2004 school year is expected to be $2,914.00. A copy of the Student Housing Contract Rate Schedule is attached hereto as Exhibit B.

13. Amanda's meal plan is expected to be $1,400.00 per year.

14. A year is considered as three (3) semesters so that summer school will require an additional meal plan.

15. Amanda's books are expected to cost $600.00-$800.00 per year according to the University.

16. There are trust funds in Amanda's name of approximately $49,000.00 available for tuition only.

17. The trust funds may not be used for books, room and board, meals, fees or other personal and necessary expenses.

18. The Defendant has the far greater ability to pay Amanda's post-high school educational expenses, including, but not limited to, books, fees and room and board.

19. The Plaintiff is disabled and receives Social Security Disability Income.

20. The Defendant is incarcerated, however, he owns substantial assets and property from which he may contribute to Amanda's post-high school educational expenses.

21. The Plaintiff's Comprehensive Financial Statement is attached hereto as Exhibit C.

WHEREFORE, the Plaintiff, Rosemarie Re, respectfully requests that this Court enter an Order:

A. Requiring the Defendant to be responsible for and pay 100% of Amanda's dormitory, books and living expenses at college, excluding food, which the Plaintiff will pay; and

B. Granting to the Plaintiff such further relief as the Court deems just and equitable.

Rosemarie Re

12/13/02

## VERIFICATION BY CERTIFICATION

UNDER PENALTIES, as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies, as aforesaid, the belief that the same are true.

DATED: _12/13/02_

Rosemarie Re

12/13/02

ORDER

2116-N (Rev. 8/99)

STATE OF ILLINOIS      UNITED STATES OF AMERICA      COUNTY OF DU PAGE

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

ROSEMARIE A. RE

-vs-

RANDALL G. RE

CASE NUMBER

97 D 285

FILED

01 OCT -2 PM 4: 13

CLERK OF THE
18th JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

File Stamp Here

## ORDER

This matter coming on to be heard, the Court being fully advised in the premises and having jurisdiction of the subject matter, IT IS ORDERED HEREBY:

BOTH AMENDED MOTIONS + NOTICE OF MOTIONS
ARE DENIED
   ① MAY NOT INVADE CHILDREN'S TRUST
   ② MAY NOT REQUEST CHILDREN'S TRUST
     ACCOUNTING

THAT DISTRIBUTION OF ASSETS ARE SET FOR TRIAL
11-15-01 @ 930

Name: ROSEMARIE RE

DuPage Attorney No.: _____

Attorney for: _____

Address: 935 E. HILLSIDE RD

City/State/Zip: NAPERVILLE, IL 60540

Telephone: 961-0838

D.P.

ENTER: _____

JUDGE

DATE: 10-2-01

KIM KAYE
DEPUTY CLERK

OCT 1 0 2001

JOEL A. KAGANN, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT
WHEATON, ILLINOIS 60189-0707

C-007 4766

Ex "C"

## CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
### DuPage County, Illinois

505 N. County Farm Road
Wheaton, Illinois 60187-3907

**RODNEY W. EQUI**
Circuit Judge

February 16, 2004

Terry O'Donnell, Esq.
240 East Lake Street, Suite 101
Addison, IL 60101

Ms. Rosemarie Re
c/o Office of the State's Attorney

Patricia deRosset, Esq.
Office of the State's Attorney
505 North County Farm Road
Wheaton, IL 60187

Re: <u>In re the Marriage of Re</u>, 97 D 285

Counselors and Ms. Re:

The matter comes before the court for ruling on various motion. In reaching the conclusions set forth herein, the court considers the evidence presented, the exhibits offered and received, the evidentiary deposition of Randall Re, all applicable statutory and other factors, and the law as applicable to the facts. The court reaches these conclusions without a long and involved history of the case, but rather based upon the pleadings and the evidence adduced at the hearing. To the extent that arguments may go beyond the evidence adduced at the hearing, the court is duty-bound to ignore those arguments.

None of the matters are extraordinarily complicated. The court can consider Ms. Re's Petition to Increase Child Support and Mr. Re's Petition to Abate Child Support simultaneously. Mr. Re seeks an abatement based upon his incarceration and therefore his "inability" to generate income from which the child support should be paid. Mr. Re is possessed of assets, however, from which support can be paid. Further, his incarceration was the result of a voluntary act on his part, and does not justify an abatement of support. Mr. Re's Petition to Abate is therefore denied.

There is, however, no substantial change in circumstances that is sufficient to justify an increase in support. While it is true that the children have gotten older, Amanda is also now attending college (the subject of an additional petition) and certainly Mr. Re's income has not increased. Therefore Ms. Re's Petition to Increase Child Support is likewise denied.

Ex "D"

The court finds that a trust pursuant to 750 ILCS 5/503(g) is an appropriate and necessary vehicle to secure the payment of support. Mr. Re has otherwise no incentive to pay the support from his remaining assets. His incarceration makes enforcement of child support via contempt completely ineffective. The support cannot be secured by an order of withholding. The only way to protect the payment of that support is by the creation of a fund from which the support is paid. At the court's request the Office of the State's Attorney calculated the amount of support. Absent any objection, the amount designated will be placed in a 503(g) trust and support paid there from[1]. Any appreciation in the trust principal will be applied toward the college costs of Russell, and if there are no college costs, then returned to Mr. Re.

The court next turns to the issue of medical bills and medical insurance. Much of Ms. Re's argument in this regard relates more to events occurring prior to the entry of judgment. Absent a viable motion to vacate the judgment of dissolution, this court is limited in the relief that can be granted to that permitted by the judgment or any proper modification thereof. Accordingly, since there was no evidence of medical bills incurred after the entry of judgment in 2002 there can be no order to pay them[2]. With respect to the payment of medical insurance premiums, however, the court's review of the orders indicates that Mr. Re is obligated to pay for major medical insurance pursuant to the "Reconsidered" judgment of March 17, 2000. Upon presentation by Ms. Re of evidence of the cost, an additional amount to cover the premiums through August 2009 will be placed in the 503(g) trust. The trust is an appropriate vehicle here for the same reasons as set forth for child support. Similarly, the cost of a *term* policy of life insurance shall be placed in the trust. Ms. Re indicates that the policy is a whole life policy; the cost of a term policy can be calculated and that amount only placed in the trust, sufficient to cover premiums through August 2009.

Each party shall submit his, her, or its suggestion for trustee of the 503(g) trust. Should the Office of the State's Attorney be willing to perform the function the court would appoint that office. Otherwise the court will be forced to select a trustee or trustees from the suggestions of the parties. Those suggestions should be presented to the court on the March 5 status date, and can then either be inserted into an order, or ultimately be included in a trust document which will be prepared.

The court next turns to Ms. Re's request for maintenance. Clearly she incurs very substantial medical expenses, beyond the incomes on most families. Just as clearly, Mr. Re presently is in no position to pay any maintenance. This court can, however, upon Ms. Re's Petition, continue the reservation of maintenance for an additional ten-year period, until February 15, 2014. Mr. Re has a proven ability to earn substantial sums, and therefore may be in a position to pay maintenance in the future. But for this extension of the reservation period, Ms. Re's Petition is denied.

---

[1] However, there is no cost of living adjustment contemplated by the statute or case law.

[2] The court will concede that the serial judgments entered herein are less than crystal clear, and leave room for doubt. If the evidence at the trial or hearing, of $113,000 in debts incurred by Ms Re, included all medical bills (as the court believes is the case) then she is not entitled in this action to go behind that order.

The court has also considered Mr. Re's Petition regarding personal property. The court concludes that Mr. Re has failed to meet his burden as to the "disputed" personal property, and therefore his petition is denied.

Lastly, the court notes Ms. Re's closing argument concerning the cost of college. In her closing she states "When additional assets are found, Plaintiff will be requesting Defendant to participate in the shortfall..." Based upon Amanda's present scholarship and Ms. Re's closing argument, the court reserves any 513 determination.

Ms. deRosset and Mr. O'Donnell are to prepare the calculations required herein, and then an order consistent herewith for presentation, with notice to Ms. Re. The matter is set for status on March 5, 2004 at 9:25 am without further notice.

Very Truly Yours,


Rodney W. Equi
Circuit Judge

3

STATE OF ILLINOIS      )
                        )   SS

COUNTY OF DU PAGE    )

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DU PAGE COUNTY, WHEATON, ILLINOIS

IN RE THE MARRIAGE OF         )
ROSEMARIE RE,                 )
                                )
                  Petitioner,    )
                                )       Case No.   97 D 285
          vs.                  )
                                )
RANDALL RE,                 )
                                )
                  Respondent.   )

## ORDER

THIS MATTER coming before the Court for hearing on various motions, the Court, based upon evidence presented, exhibits offered and received, the evidentiary deposition of Randall Re, all applicable statutory and other factors and the law as applicable to the facts,

IT IS HEREBY ORDERED:

1.   That Mr. Re's <u>Petition to Abate Child Support</u> is denied. Mr. Re seeks his abatement based on his incarceration and his "inability" to generate income from which the child support should be paid. Mr. Re has assets, however, from which support can be paid; and, further, his incarceration was the result of a voluntary act on his part.

2.   Mrs. Re's <u>Petition to Increase Child Support</u> is denied. There is no substantial change in circumstances sufficient to justify an increase in support. While the children have gotten older, Amanda is now attending college and Mr. Re's income has not increased.

3.   <u>Petition to Establish a 503(g) Trust</u> to secure payment of support is granted. The amount of $24,500.00 shall be placed in the 503(g) Trust which represents child support from March 20, 2004 until August 22, 2009. Child support shall be paid monthly from the 503(g) Trust. Any appreciation in the Trust principal will be applied toward the college costs of Russell, and if there are no college costs, then returned to Mr. Re.

4.   Concerning medical bills and medical insurance, since there was no evidence of medical bills incurred after the entry of the "Reconsidered" Judgment of March 17, 2000, there can be no order to pay them. Mr. Re, however, is obligated to pay for major medical insurance pursuant to the "Reconsidered" Judgment of March 17, 2000. Premiums in the amount of $ 10,322.46 shall be placed in the 503(g) Trust to cover medical premiums from January 20, 2004 to August 22, 2009. The amount of $ 2305.00 shall also be placed in the 503(g) to cover the premiums for a term policy of life insurance through August 22, 2009.

EXHIBIT
"E"



5. Mrs. Re's <u>Petition for Maintenance</u> is denied but the court continues the reservation of maintenance for an additional ten (10) years period until February 15, 2014.

6. Mr. Re's Petition regarding personal property is denied as Mr. Re has failed to meet his burden.

7. Any 513 determinations concerning college costs are reserved.

8. The trustee appointed to administer the 503(g) Trust is *Donna Roberts*. The 503(g) Trust ~~shall be~~ *has been* prepared by Ekroth and Osborne, Ltd.

9. The Court has reviewed the trust pursuant to 735 ILCS 503(g) and has found the trust complies with ~~the~~ the requirements of 503(g).

10. The Court's memorandum of Feb. 16, 2004 is made ~~to~~ a part of this order.

ENTER: _____ Judge

DATE: 5-6-04

Patricia deRosset, A.S.A.
JOSEPH E. BIRKETT
DuPage County State's Attorney
Attorney No. 50000
505 North County Farm Road
Wheaton, IL 60187
630/682-7307

C:\MyFiles\Re.agr.order.wpd

15 Salt Creek Ln
Suite 122
HINSDALE 60521

2

February 14, 2005

Pat DeRosset
State Attorney's Office
DuPage County
505 N. County Farm Road
Wheaton, Il 60189


RE:   Rosemarie Re v. Randall Re
      Case No. 97-D-285


Ms. DeRosset:

    Please provide me a record of my child support payments
made by me or on my behalf. Enclosed is a copy of the order
filed July 30, 2003. I have a hearing scheduled on March 4,
2005 and I need this information regarding my past child support
payments as soon as possible. Please send the requested infor-
mation to me at the address below.

    Thank you for your assistance.


Sincerely,

Randall Re
Reg. No. 14617-424
FCI Milan
P.O. Box 1000
Milan, MI 48160


Ex "F"

June 16, 2005


Pat DeRosset
State Attorney's Office
DuPage County
505 N. County Farm Road
Wheaton, IL 60189



RE:   Rosemarie Re v. Randall Re
      Case No. 97-D-285



Ms. DeRosset:

   On February 14, 2005, I sent the attached letter regarding
obtaining a record of my child support payments.  I have received
no response.  I am requesting a record of my child support payments
and an accounting of my 503(g) Trust which has been established
and funded.  I cannot rely on my former attorney, Terry O'Donnell.
He has managed to embezzle my funds that were entrusted to him
in his client's account.

   If you do not have this information, please direct me to some-
one that I can obtain this information from.  Thank you for your
assistance.



Sincerely,

Randall Re
Reg. No. 14617-424
FCI Milan
P.O. Box 1000
Milan, MI 48160

# RE CHILDREN'S
# TRUST AGREEMENT

*RANDALL Re*
*C/O TERRY O'DONNELL*
*of Addison, IL*

**THIS AGREEMENT** made as of this 6th day of ~~April,~~ May 2004 by and between ~~ROSEMARIE A. RE, of Venice, Florida~~ (hereinafter referred to as the "Grantor"), and DONNA M. ROBERTS, of Venice, Florida (hereinafter referred to as the "Trustee").

**FIRST:**     Trust. This Trust is being established pursuant to an order entered in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Wheaton, Illinois, case of *In Re the Marriage of Rosemarie Re vs Randall Re*, Case No. 97D285.

This Trust may not be amended or revoked without an order of the Court having jurisdiction over this divorce case.

The purpose of this Trust is to provide for the support of Russell Garrett Re and Randall George Re (herein after referred to individually, as either Russell or Randall and collectively as beneficiaries or sons) pursuant to 750ILCS 5/503(g). Such support shall include expenditures for:

1.     Child support as ordered by the Court;
2.     Major medical insurance premiums from January 30, 2004 to August 22, 2009;
3.     Premium for a term life insurance policy insuring the life of their father Randall Re through August 22, 2009.

## WITNESSETH:

*TOP as of May 5, 2004*

**SECOND:**     Trust Property. Simultaneously with the execution of this Agreement, and pursuant to Court order, Randall Re, through his attorney, Terry O'Donnell shall deliver, assign, transfer or convey to the Trustee, and the Trustee shall accept the sum of ~~$25,900.00~~ 32,800.00 for ~~support and other amounts ordered~~ by the Court for medical insurance premiums, and life insurance on Mr. Re, together with other property, if any, that hereafter may from time to time be added to this Trust by any person, and all income earned thereon investments and reinvestments thereof are hereinafter referred to as the "Trust Estate" and which shall be held and administered for the purposes and on the terms and conditions hereinafter stated.

The succeeding provisions of this agreement shall be subject to the terms of this section.

*Pmt.          11/ out          $700*
*10/                   700*
*11/                   700*

*Exhibit "G"*

**THIRD:**    Support, Income and Principal Payments. The Trustee shall hold $~~35,900~~ *33,800.⁰⁵* of the assets in trust and shall manage, invest such trust property and distribute ~~so much or all of the net income of the Trust Estate and so much or all of the principal thereof to or for the benefit of the Grantor's sons, as the Trustee in its discretion, determines is needed for the support, maintenance, education and general welfare of the sons, as those terms defined in 705 ILCS 5/503(g) and as modified by Court order. Any net income not distributed may be added to the principal of the Trust Estate.~~ *the assets per the attached Child Support Payment Schedule to DuPage County Circuit Court Clerk, P.o. Box 707) wheaton, Il 60189 -* *TO⟩*

SECTION 1: Any or all of the principal in the trust and any income added to the principal not used for support, and including any appreciation, shall be applied toward the college costs of Russell.

SECTION 2: The sum of $ *10,322.⁴⁶* shall be held by the trustee for the payment of major medical insurance premiums, insuring the two sons medical expenses from January 4, 2004 to August 22, 2009. *Evidence of health insurance payments To be Sent to Randall Re C/o his attorney oJERRY O'DONNELL at 240 E. lake #101 Addison Ic. 60101 (Yearly)* *TO⟩*

SECTION 3: The sum of $ *2305.* shall be held by the trustee for the payment of premiums on a life insurance policy insuring the life of Randall Re for a term policy of life insurance to *un less* August 22, 2009.    (✳) *10,522.46* *Insurance Company Chase from Fortis*

SECTION 4: On August 22, 2009, any trust assets then remaining in the trust shall be returned to the beneficiaries' father, Randall Re by paying such amount to his attorney, Terry O'Donnell, *unless Russell has enrolled in College . TO⟩*

**FORTH:**    Trustee's Powers.    In addition to inherent, implied or statutory powers vested in trustees by law, the Trustee shall have the following powers:

SECTION 1:    If income or discretionary amounts of principal become payable to a minor or to a person under legal disability or to a person not adjudicated disabled but who, by reason of illness or mental or physical disability, is in the opinion of the trustee unable properly to manage his or her affairs, than that income or principal shall be paid or expended only in such of the following ways as the trustee deems best: (a) to the beneficiary directly; (b) to the legally appointed guardian of the beneficiary; (c) to a custodian for the beneficiary under a Uniform Gifts to Minors Act or Uniform Transfers to Minors Act; (d) by the trustee directly for the benefit of the beneficiary; (e) to an adult relative or friend in reimbursement for amounts properly advanced for the benefit of the beneficiary.

SECTION 2:    The interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. This provision shall not limit the exercise of any power of appointment.

SECTION 3:    Income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by the trustee as income to the persons entitled to the next successive interest in the proportion in which they take that

2

interest.

SECTION 4:    For convenience of administration or investment, the trustee may hold the several trusts as a common fund, dividing the income proportionately among them, assign undivided interests to the several trusts, and make joint investments of the funds belonging to them. The trustee may consolidate any separate trust with any other trust with similar provisions for the same beneficiary or beneficiaries.

SECTION 5:    The trustee shall hold, manage, care for and protect the trust property and shall have the following powers, and except to the extent inconsistent herewith, those now or hereafter conferred by law:

(a)    To retain any property (including stock of any corporate trustee hereunder or a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not a type, quality or diversification considered proper for trust investments;

(b)    To conservatively invest and reinvest the trust property in high quality bonds, stocks, mortgages, notes, or other property of any kind, real or personal, domestic or foreign, suitable for the conservative investment of trust funds so that the preservation of capital is emphasized even at the expense of growth of principal;

(c)    To cause any property, real or personal, belonging to the trust to be held or registered in the trustee's name or in the name of a nominee or in such other form as the trustee deems best without disclosing the trust relationship;

(d)    To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which the trustee's possession of voting discretion would subject the issuing company or the trustee to any law, rule or regulation adversely affecting either the company or the trustee's ability to retain or vote company securities, shall be voted as directed by the Grantor if living, otherwise by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion right; to consent to and join in or oppose any voting trust, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other property received therefor;

(e)    To sell at public or private sale, contract to sell, convey, exchange, transfer and otherwise deal with the trust property and any reinvestments thereof, and to sell covered options, from time to time for such price and upon such terms as the trustee sees fit;

(f)    To employ agents, attorneys and proxies and to delegate to them such powers, discretionary or otherwise, as the trustee considers desirable, and to designate a deputy for a checking account, savings account or safe deposit box;

(g)    To compromise, contest, prosecute or abandon claims in favor of or against the trust;

(h)    To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interest in assets, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes; to value the trust property and to sell any part of all thereof in order

3



to make allocation or distribution; no action taken by the trustee pursuant to this paragraph shall be subject to question by any beneficiary;

(i)        To elect, pursuant to the terms of any employee benefit plan, individual retirement plan or insurance contract, the mode of distribution of the proceeds thereof, and no adjustment shall be made inn the interest of the beneficiaries to compensate for the effect of the election;

(j)        To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

SECTION 6:   The trustee, shall render an account of its receipts and disbursements and a statement of assets at least annually to the Court retaining jurisdiction over the divorce, and the Grantor if living, otherwise to each beneficiary then entitled to receive or have the benefit of the income from the trust. If a beneficiary then entitled to receive or have the benefit of the income from the trust, is a minor, the trustee shall render said reports to the parent or guardian of said beneficiary.  The trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust.  Any individual trustee shall be paid a reasonable compensation for acting as trustee hereunder, and any corporate successor trustee shall receive compensation for its services in accordance with its schedule of fees in effect from time to time.  A trustee's regular compensation shall be charged against income during the Grantor's lifetime and thereafter half against income and half against principal, except that the trustee shall have full discretion at any time or times to charge a larger portion or all against income.

SECTION 7:   The trustee may petition the Court to terminate and distribute any trust to the beneficiaries hereunder if the trustee determines that the costs of continuance thereof will substantially impair the accomplishment of the purposes of the trust.  The trustee shall terminate and forthwith distribute the trust created hereby, on August 22, 2009, with Court approval and under such terms and to such beneficiaries as the Court determines. .

SECTION 8:   Any trustee may resign as trustee at any time by written notice to the Grantor, the Beneficiaries, their guardian, and the Court. After the trustee's resignation, death or inability to manage the trust affairs, the Grantor shall nominate and appoint a successor trustee subject to Court approval. The successor trustee shall have all the powers given **DONNA M. ROBERTS**, as the original trustee.

Every successor trustee shall have all the powers given the originally named trustee.  No successor trustee shall be personally liable for any act or omission of any predecessor.  With the Grantor's approval if living, otherwise with the approval of the beneficiary or a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from the trust, a successor trustee may accept the account rendered and the property received as a full and complete discharge to the predecessor trustee without incurring any liability for so doing, except that a successor to the Grantor as trustee shall, without approval, accept the assets delivered to the successor trustee as constituting all of the property to which the successor trustee is entitled and shall not inquire into my administration or accounting as trustee.

The parent or guardian of a beneficiary under disability or a minor shall receive notices and have

4

authority to act for the beneficiary under this trust.

SECTION 9:   In disposing of any trust property subject to a power to appoint by will, the trustee may rely upon instrument admitted to probate in any jurisdiction as the will of the donee or may assume that he or she died intestate if the trustee has no notice of a will within three (3) months after his or her death.

**FIFTH:**   General Provisions.

SECTION 1: Irrevocable Trust. This Trust Agreement is and shall not be amended, modified or terminated without Court approval.

SECTION 2:   Additions to Trust Estate. The Grantor or any other person may from time to time add to the Trust Estate other property and if, as and when such additions are to be made, the same shall be transferred or conveyed to the Trustee in manner and form satisfactory to it and thereafter shall be held, administered and distributed as if such additions had constituted a part of the original Trust Estate.

SECTION 3:   Accounting. At least annually, the Trustee shall render or cause to be rendered to the Grantor the Beneficiaries, and the Court, statements of account showing the condition of the Trust Estate.

SECTION 4:   Trustee's Bond. A bond or other security shall be required of the Trustee or the successor Trustee for the faithful performance of the duties of Trustee hereunder in any jurisdiction whatsoever, as set by the Court.

SECTION 5:   Spendthrift Clause. To the extent permitted by law, the Beneficiary shall have no power to dispose of, or to charge by way of anticipation, any interest given to her, and all sums payable to the Beneficiary shall be free and clear of her debts, contracts, dispositions and anticipation, and shall not be taken or reached by any legal or equitable process in satisfaction thereof.

SECTION 6:   Scope of Agreement. The provision of this Agreement of Trust shall extend to and shall bind the heirs, executors, administrators, legal representatives, successors and assigns, respectively, of the parties hereto.

SECTION 7: Illinois Law Controls. The administration of this trust shall be construed and regulated by the laws of the State of Illinois.
SECTION 8: TRUSTEE AGREES TO submit to Jurisdiction TO
of ILLINOIS COURTS.
IN WITNESS WHEREOF, the Grantor and Trustee have hereunto set their hands and seals as of the day and year first above written.

_____          _____
ROSEMARIE A. RE, Grantor                  **DONNA M. ROBERTS**, Trustee
RANDALL RE
by his Attorney TERRY O'DONNELL
240 E. Lake St #101
Addison, IL. 60101 (630) 832-5000

5

## SCHEDULE A
## LIST OF ASSETS

1.    **For Support:**      $ ~~35,900.00~~ 33,800.00

2.    **For Medical Insurance Premiums:**    $ 10,322.40

3.    **For Term Life Insurance Premiums:**    $ 2,305.00

Dated: 5-5-04

_____
~~ROSEMARIE A. RE~~, Grantor
RANDALL RE.
by his Attorney

_____
**DONNA M. ROBERTS**, Trustee

6

## SCHEDULE B
### MONTHLY CHILD SUPPORT PAYMENTS

| | |
|---|---|
| 4/20/04 - 1/19/05 | ($ 700.00 per month) |
| 1/20/05 - 1/19/06 | ($ 500.00 per month) |
| 1/20/06 - 1/19/07 | ($ 500.00 per month) |
| 1/20/07 - 1/19/08 | ($ 500.00 per month) |
| 1/20/08 - 1/19/09 | ($ 500.00 per month) |
| 1/20/09 - 8/22/09 | ($ 500.00 per month) |

Child support payments specified above shall be paid each month to the Clerk of the Circuit Court DuPage County, Illinois. A check shall be mailed to DuPage County Circuit Court Clerk, P.O. Box 707, Wheaton, IL 60189-0707, or funds may be wire transferred, at the option of the trustee.

Dated: _____

RANDALL RE, Grantor
by his attorney:      Terry O'Donnell
                     240 E. Lake St., #101
                     Addison, IL 60101
                     630-832-5000

DONNA M. ROBERTS, Trustee

7

**STATE OF ILLINOIS**

**UNITED STATES OF AMERICA**

**COUNTY OF DU PAGE**

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

J. R. M. C.

Re

-vs-

Re

CASE NUMBER

97 D 285

File Stamp Here

## ORDER

This matter coming on to be heard, the Court being fully advised in the premises and having jurisdiction of the subject matter, IT IS ORDERED HEREBY:

Hearing being held telephonically it is hereby ordered:

Danna Roberts is to provide copies of accountings for all trusts she handles related to the Re children to Randall Re directly;

Daniel Fabbri is given leave to withdraw instanter;

Telephonic hearing as to child custody issues to be held Feb 17, 2006 at 8:30 a.m Central time;

Rosemarie Re to file her appearance prior to the Feb 17th hearing;

**COPY**

Name: Daniel Fabbri

DuPage Attorney No.: 240418

Attorney for: Rosemarie Re

Address: 1770 N. Park St

City/State/Zip: Naperville IL 60563

Telephone: 630/ 522-1595

ENTER: Jan 24, 2006

JUDGE

DATE: George J. Antos

EXHIBIT "H"

**Amanda Marie Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2003**

### Summary

|  | Income | | Principal | | Total |
|---|---|---|---|---|---|
| Beginning Assets | | | | $ | - |
| Receipts - Schedule A | $ | 28.67 | $ | 51,966.27 | 51,994.94 |
| Disbursements - Schedule B | $ | 655.00 | $ | 32,246.52 | 32,901.52 |
| Ending Assets - Wachovia Bank | | | | $ | 19,093.42 |

EXPENDITURES

APPROXIMATE AMOUNTS

Vehicle — 11,000
COST

EXPENSES        5,500
IN 2 YEARS    $16,500

Child   Support   —————   2,000

——————   5,100

$23,600

1

Ex "I"

Amanda Marie Re Trust
**Fiduciary Accounting for Year Ended December 31, 2003**

## Schedule A
## Receipts

| Description | Date | Income | | Principal | | Total |
|---|---|---|---|---|---|---|
| Funding of account | 7/25/2003 | | $ | 48,686.75 | $ | 48,686.75 |
| Cap Account Interest/Dividend | 7/31/2003 | $ 1.29 | | | | 1.29 |
| Cap Account Interest/Dividend | 8/29/2003 | $ 7.13 | | | | 7.13 |
| Grant & scholarship monies to reimburse tuition | 9/18/2003 | | $ | 3,279.52 | | 3,279.52 |
| Cap Account Interest/Dividend | 9/30/2003 | $ 5.33 | | | | 5.33 |
| Cap Account Interest/Dividend | 10/31/2003 | $ 5.57 | | | | 5.57 |
| Cap Account Interest/Dividend | 11/28/2003 | $ 5.02 | | | | 5.02 |
| Cap Account Interest/Dividend | 12/31/2003 | $ 4.33 | | | | 4.33 |
| | | | | | $ | 51,994.94 |

2

**Fiduciary Accounting for Year Ended December 31, 2003**

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 7/28/2003 | | $ 1,589.09 | $ 1,589.09 |
| Bealls Store $98.87 | | | | |
| Linens N Things $154.35 | | | | |
| BeBe Store $60.31 | | | | |
| Tommy Hilfiger $10.65 | | | | |
| National Student Svcs Ins $79.00 | | | | |
| Disney tickets 4 day pass $116.09 | | | | |
| ~~Albertsons~~ | | | | |
| Mail Boxes Etc. $2.80 | | | | |
| Sears dorm grill $16.02 | | | | |
| USF parking sticker $105.00 | | | | |
| Orientation USF $60.00 | | | | |
| ~~Firestone repairs auto Camaro $886.90~~ | | | | |
| Rosemarie Re-Reimbursement | 8/5/2003 | | $ 1,192.86 | 1,192.86 |
| Linens N Things $832.31 | | | | |
| Walmart: refrig, TV, microwave $360.55 | | | | |
| GMAC | 8/5/2003 | | $ 10,374.25 | 10,374.25 |
| Payoff of '96 Chev Cameto | | | | |
| Donna M Roberts, CPA | 8/6/2003 | $ 330.00 | | 330.00 |
| Trustee svcs through 7/31/03 | | | | |
| Muirhead Gaylor & Steves LLP | 8/14/2003 | $ 325.00 | | 325.00 |
| Tel conferences & preparation of | | | | |
| Resignation & Acceptance of Trust | | | | |
| Rosemarie Re-Reimbursement | 8/5/2003 | | $ 2,701.96 | 2,701.96 |
| GMAC car payment for Jun '03 $350.98 | | | | |
| GMAC car payment for Jul '03 $350.98 | | | | |
| Child support Apr, May, Jun, Jul, Aug $2000.00 | | | | |
| USF rent | 8/13/2003 | | $ 514.00 | 514.00 |
| Amanda Re-Reimbursement | 8/15/2003 | | $ 714.06 | 714.06 |
| Panhellenic council $55.00 | | | | |
| Walmart, form supplies$474.20 | | | | |
| Auto repair 184.86 | | | | |
| USF tuition | 8/28/2003 | | $ 1,175.36 | 1,175.36 |
| USF rent | 8/21/2003 | | $ 514.00 | 514.00 |

3

## Schedule B
## Disbursements
## Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Amanda Re-Reimbursement | 8/29/2003 | | $ 3,225.16 | 3,225.16 |
| USF food plan $1222.34 | | | | |
| USF A D PI $1005.00 | | | | |
| USF books $47.08 | | | | |
| USF tuition check short $25.00 | | | | |
| USF books $301.09 | | | | |
| Tolls $8.00 | | | | |
| Gas $21.54 | | | | |
| Gas $27.53 | | | | |
| Publix - dorm $120.33 | | | | |
| Pier 1, dorm $5.99 | | | | |
| Walmart, dorm $27.49 | | | | |
| Target, dorm $26.87 | | | | |
| Walmart, dorm $51.79 | | | | |
| Olive Garden, moving day to dorm $35.11 | | | | |
| School clothes $250.00 | | | | |
| Cash from mom $50.00 | | | | |
| Amanda Re | 9/15/2003 | | $ 1,500.00 | 1,500.00 |
| Living expenses Aug,Sep,Oct | | | | |
| Dell Computer | 9/25/2003 | | $ 1,461.08 | 1,461.08 |
| Amanda Re | | | | |
| Rosemarie Re-Reimbursement | 10/7/2003 | | $ 335.70 | 335.70 |
| Darby South auto repair | | | | |
| Amanda Re | 11/7/2003 | | $ 1,500.00 | 1,500.00 |
| Living expenses Nov,Dec, Jan | | | | |
| Rosemarie Re-Reimbursement | 11/28/2003 | | $ 830.65 | 830.65 |
| Tony's Restoration auto repair $300.00 | | | | |
| Darby South auto repair $194.95 | | | | |
| Darby South auto repair $335.70 | | | | |
| ████████████████ | 12/10/2003 | | $ ██████ | 4,501.35 |
| ████████████████ | | | | |
| ████████████████ | | | | |
| ████████████████ | | | | |
| ████████████████ | | | | |
| Rosemarie Re-Reimbursement | 12/26/2003 | | $ 87.00 | 87.00 |
| ████████████████ | | | | |
| ████ Dental $26.00 | | | | |
| Min bal fee for prior month | 12/2/2003 | | $ 30.00 | 30.00 |
| | | | $ | 32,901.52 |

4

**Amanda Marie Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2004**

## Summary

|  | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets |  |  | $ 19,093.42 |
| Receipts - Schedule A | $ 26.06 |  | 26.06 |
| Disbursements - Schedule B | $ 1,010.00 | $ 14,880.10 | 15,890.10 |
| Ending Assets - Wachovia Bank |  |  | $ 3,229.38 |

1

Amanda Marie Re Trust
**Fiduciary Accounting for Year Ended December 31, 2004**

### Schedule A
### Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Cap Account Interest/Dividend | 1/30/2004 | $ 3.75 | $ | 3.75 |
| Cap Account Interest/Dividend | 2/27/2004 | $ 2.84 | | 2.84 |
| Cap Account Interest/Dividend | 3/31/2004 | $ 2.83 | | 2.83 |
| Cap Account Interest/Dividend | 4/30/2004 | $ 2.74 | | 2.74 |
| Cap Account Interest/Dividend | 5/28/2004 | $ 2.21 | | 2.21 |
| Cap Account Interest/Dividend | 6/30/2004 | $ 1.80 | | 1.80 |
| Cap Account Interest/Dividend | 7/30/2004 | $ 1.86 | | 1.86 |
| Cap Account Interest/Dividend | 8/31/2004 | $ 1.86 | | 1.86 |
| Cap Account Interest/Dividend | 9/30/2004 | $ 1.71 | | 1.71 |
| Cap Account Interest/Dividend | 10/29/2004 | $ 1.49 | | 1.49 |
| Cap Account Interest/Dividend | 11/30/2004 | $ 1.55 | | 1.55 |
| Cap Account Interest/Dividend | 12/31/2004 | $ 1.42 | | 1.42 |
| | | | | $ 26.06 |

Fiduciary Accounting for Year Ended December 31, 2004

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Min bal fee for prior month | 1/5/2004 | | $ 30.00 | $ 30.00 |
| Donna Roberts CPA TTEE fees | 1/13/2004 | $ 330.00 | | 330.00 |
| Amanda Re-Reimbursement | 1/13/2004 | | $ 2,122.61 | 2,122.61 |
|   Walmart $128.91 | | | | |
|   Walmart $114.43 | | | | |
|   Gray's College Book Store $303.78 | | | | |
|   ████████████████ | | | | |
|   Living expenses $1500.00 | | | | |
| USF (Bal tuition) | 1/27/2004 | | $ 73.21 | 73.21 |
| Amanda Re-Reimbursement | 1/27/2004 | | $ 467.19 | 467.19 |
|   ████████████ | | | | |
|   Albertsons RX ████ | | | | |
|   █████ 9.70 | | | | |
|   ██████████ | | | | |
|   Walgreens $9.49 | | | | |
| Amanda Re-Reimbursement | 1/28/2004 | | $ 761.23 | 761.23 |
|   Walmart $19.64 | | | | |
|   Albertsons RX $5.00 | | | | |
|   K-mart RX $5.00 | | | | |
| Min bal fee for prior month | 2/3/2004 | | $ 30.00 | 30.00 |
| Donna Roberts CPA | 2/5/2004 | $ 200.00 | | 200.00 |
|   Preparation of Form 1041 | | | | |
| Amanda Re-Reimbursement | 2/11/2004 | | $ 1,297.34 | 1,297.34 |
|   USF Meal ticket $1247.34 | | | | |
|   National Honor Society $50 | | | | |
| Min bal fee for prior month | 3/2/2004 | | $ 30.00 | 30.00 |
| Min bal fee for prior month | 4/2/2004 | | $ 30.00 | 30.00 |
| Amanda Re-Reimbursement | 4/20/2004 | | $ 83.59 | 83.59 |
|   ██████████ | | | | |
|   Pictures $57.90 | | | | |
| Min bal fee for prior month | 5/4/2004 | | $ 30.00 | 30.00 |
| Amanda Re-Reimbursement | 5/6/2004 | | $ 3,991.70 | 3,991.70 |
|   ██████████████ | | | | |
|   Rent 3 months $1395.00 | | | | |
|   █████████████ | | | | |
|   Living Expenses 3 months $900 | | | | |
|   USF ███████████ | | | | |
| Amanda Re-Reimbursement | 5/6/2004 | | $ 290.85 | 290.85 |
|   USF Bal Tuition & fees $290.85 | | | | |

Amanda Marie Re Trust
Fiduciary Accounting for Year Ended December 31, 2004

## Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Donna Roberts CPA | 5/11/2004 | $  300.00 | | 300.00 |
| Accounting svc thru 5-11-04 | | | | |
| Charles A Tomeo DMD PA | 5/11/2004 | | $    134.99 | 134.99 |
| Min bal fee for prior month | 6/2/2004 | | $      30.00 | 30.00 |
| Min bal fee for prior month | 7/2/2004 | | $      30.00 | 30.00 |
| Min bal fee for prior month | 8/3/2004 | | $      30.00 | 30.00 |
| Min bal fee for prior month | 9/2/2004 | | $      30.00 | 30.00 |
| USF | 9/15/2004 | | $   2,071.68 | 2,071.68 |
| Rent $1860 | | | | |
| Tuition $211.68 | | | | |
| Amanda Re Living Expenses | 9/15/2005 | | $   1,000.00 | 1,000.00 |
| two months | | | | |
| National Union Fire Ins Co | 9/16/2004 | | $    997.00 | 997.00 |
| Homeowners Ins. | | | | |
| Min bal fee for prior month | 10/4/2004 | | $      30.00 | 30.00 |
| Min bal fee for prior month | 11/2/2004 | | $      30.00 | 30.00 |
| Amanda Re Reimbursement | 11/4/2004 | | $    200.00 | 200.00 |
| Partial reimbursement auto | | | | |
| accident deductible | | | | |
| Safco Ins Co - auto insurance | 11/17/2004 | | $   1,028.71 | 1,028.71 |
| Min bal fee for prior month | 12/2/2004 | | $      30.00 | 30.00 |
| Donna Roberts CPA, TTEE fees | 12/16/2004 | $  180.00 | | 180.00 |
| | | | $ | 15,890.10 |

4

**Amanda Marie Rec Trust**
**Fiduciary Accounting for Year Ended December 31, 2005**

## Summary

|  | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets |  |  | $ 3,229.38 |
| Receipts - Schedule A | $ 0.84 |  | 0.84 |
| Disbursements - Schedule B | $ 306.22 | $ 2,924.00 | 3,230.22 |
| Ending Assets - Wachovia Bank |  |  | $ - |

1

Amanda Marie Rel Trust
**Fiduciary Accounting for Year Ended December 31, 2005**

### Schedule A
### Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Cap Account Interest/Dividend | 1/31/2005 | $ 0.11 | | $ 0.11 |
| Interest Paid | 1/21/2005 | $ 0.42 | | 0.42 |
| Interest Paid | 2/17/2005 | $ 0.22 | | 0.22 |
| Interest Paid | 3/22/2005 | $ 0.07 | | 0.07 |
| Interest Paid | 4/20/2005 | $ 0.02 | | 0.02 |
| | | | | $ 0.84 |

2

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Harland Checks | 1/12/2005 | | $ 8.00 | $ 8.00 |
| Rosemarie Re-Reimbursement | 1/25/2005 | | $ 1,786.00 | 1,786.00 |
| Amanda Allowance $1000.00 | | | | |
| College expenses $400.00 | | | | |
| Books $382.00 | | | | |
| USF | 2/2/2005 | | $ 1,100.00 | 1,100.00 |
| Service fee | 2/17/2005 | | $ 10.00 | 10.00 |
| Donna Roberts C.P.A. | 3/14/2005 | $ 200.00 | | 200.00 |
| Preparation 2004 Form 1041 | | | | |
| Service fee | 3/17/2005 | | $ 10.00 | 10.00 |
| Service fee | 4/20/2005 | | $ 10.00 | 10.00 |
| Donna Roberts C.P.A. TTEE fees | 5/3/2005 | $ 106.22 | | 106.22 |
| | | | | $ 3,230.22 |

3

**Randall George Re, II Trust**
**Fiduciary Accounting for Year Ended December 31, 2003**

## Summary

|                               | Income   |      | Principal |      | Total     |
| ----------------------------- | -------: | ---- | --------: | ---- | --------: |
| Beginning Assets              |          |      |           | $    | -         |
| Receipts - Schedule A         | $ 45.60  | $    | 48,686.75 |      | 48,732.35 |
| Disbursements - Schedule B    | $ 565.00 | $    | 19,334.80 |      | 19,899.80 |
| Ending Assets - Wachovia Bank |          |      |           | $    | 28,832.55 |

EXPENDITURES
APPROXIMATE AMOUNTS

Vehicle $5,000
COST
EXPENSES 4,800
$9,800.

Child Support — 6,600

�though ████ — 15,500

Apartment Expenses — 11,000

$142,900

1

Ex "J"

## Schedule A
## Receipts

| Description | Date | | Income | Principal | | Total |
|---|---|---|---|---|---|---|
| Funding of Account | 7/25/2003 | | | $ 48,686.75 | $ | 48,686.75 |
| Cap Account Interest/Dividend | 7/31/2003 | $ | 1.29 | | | 1.29 |
| Cap Account Interest/Dividend | 8/29/2003 | $ | 9.72 | | | 9.72 |
| Cap Account Interest/Dividend | 9/30/2003 | $ | 9.19 | | | 9.19 |
| Cap Account Interest/Dividend | 10/31/2003 | $ | 9.33 | | | 9.33 |
| Cap Account Interest/Dividend | 11/28/2003 | $ | 8.95 | | | 8.95 |
| Cap Account Interest/Dividend | 12/31/2003 | $ | 7.12 | | | 7.12 |
| | | | | | $ | 48,732.35 |

2

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Expenses to pick up Randy | 7/24/2003 | | $ 1,044.45 | $1,044.45 |
| Airline to Chicago $285.00 | | | | |
| Alamo Rent A Car $165.56 | | | | |
| Parking in Ft. Myers $50.00 | | | | |
| Alamo Rent A Car $63.23 | | | | |
| Gas for car $32.07 | | | | |
| Orange Lake Country Club $139.00 | | | | |
| Delta Airlines $184. | | | | |
| Travelosity Svc Chg $5.00 | | | | |
| Disney Ticket 4-day $116.09 | | | | |
| Donna Roberts C.P.A. | 7/31/2003 | $ 240.00 | | 240.00 |
| Trustee Svcs through 7-31-03 | | | | |
| ████████████████████ | 7/31/2003 | | $ 169.00 | 169.00 |
| Muirhead, Gaylor, & Steves, L.L.P | 7/31/2005 | $ 325.00 | | 325.00 |
| Telephone conferences & preparation of Resignation and Acceptance of Trust | | | | |
| Rosemarie Re | 8/1/2003 | | $ 800.00 | 800.00 |
| Jul Child support $400.00 | | | | |
| Aug Child support $400.00 | | | | |
| Rosemarie Re-Reimbursement | 9/11/2003 | | $ 1,572.21 | 1,572.21 |
| Football shoes $60.00 | | | | |
| ████████████ | | | | |
| Joseph Deciantis, Atty $500.00 | | | | |
| Court Reporter Lisa Koehler $131.40 | | | | |
| Metered mail $2.80 | | | | |
| ████████████████ | | | | |
| Fl Kid Care Ins $20. | | | | |
| Venice High School sport fee $20.00 | | | | |
| Touchdown Club, uniform $20.00 | | | | |
| Sep Child support $400.00 | | | | |
| ████████ | | | | |
| Bealls, school clothes $235.14 | | | | |
| School clothes $19.87 | | | | |

3

## Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement<br>  Mail to IL courts $1.37<br>  Total Athlete - football $4.27<br>  Albertsons prescription $3.00<br>  Albertsons prescription $3.00<br>  Payless, sneakers $24.60<br>  Official court trans $141.75<br>  Oct Child support $500.00 | 10/7/2003 | | $    677.99 | 677.99 |
| Rosemarie Re<br>  Nov Child support $500.00 | 11/6/2003 | | $    500.00 | 500.00 |
| Re ██████████████ nses<br>  ████████████████<br>  ████████████████ per<br>  ████████████████ ge<br>  ████████████████<br>  Co███ Carters Office $███0<br>  P██████████ior trustee | 12/9/2003 | | $ ██████████ | 13,911.69 |
| R████ Re Reimbursement<br>  ████████████████<br>  ████ Decem███ $89.11█<br>  ████ $███.00<br>  ████████████████<br>  Babe's Hardware, keys $6.38<br>  Airline tickets, $318.00<br>  ██████████ $████.00<br>  Fed Ex to IL $24.00 | 12/23/2003 | | $ ██████████ | 659.46 |
| | | | | $19,899.80 |

4

Randall George Reed Trust
**Fiduciary Accounting for Year Ended December 31, 2004**

## Summary

|  | Income | | Principal | | Total |
|---|---|---|---|---|---|
| Beginning Assets |  |  |  | $ | 28,832.55 |
| Receipts - Schedule A | $ | 45.55 | $ | 2,106.52 | 2,152.07 |
| Disbursements - Schedule B | $ | 800.00 | $ | 23,040.32 | 23,840.32 |
| Ending Assets - Wachovia Bank |  |  |  | $ | 7,144.30 |

1

**Randall George Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2004**

## Schedule A
## Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Cap Account Interest/Dividend | 1/30/2004 | $ 5.88 | $ | 5.88 |
| Cap Account Interest/Dividend | 2/27/2004 | $ 5.05 | | 5.05 |
| Cap Account Interest/Dividend | 3/31/2004 | $ 5.28 | | 5.28 |
| Cap Account Interest/Dividend | 4/30/2004 | $ 5.09 | | 5.09 |
| Cap Account Interest/Dividend | 5/28/2004 | $ 4.56 | | 4.56 |
| Cap Account Interest/Dividend | 6/30/2004 | $ 3.15 | | 3.15 |
| Cap Account Interest/Dividend | 7/30/2004 | $ 2.93 | | 2.93 |
| Cap Account Interest/Dividend | 8/31/2004 | $ 2.59 | | 2.59 |
| Cap Account Interest/Dividend | 9/30/2004 | $ 2.67 | | 2.67 |
| Cap Account Interest/Dividend | 10/29/2004 | $ 2.73 | | 2.73 |
| Cap Account Interest/Dividend | 11/30/2004 | $ 2.61 | | 2.61 |
| Minimum bal fee refund | 12/16/2004 | | $ 30.00 | 30.00 |
| Deposit-Reimbursement 503(G)Trust | 12/17/2004 | | $ 2,076.52 | 2,076.52 |
| Cap Account Interest/Dividend | 12/31/2004 | $ 3.01 | | 3.01 |
| | | | $ | 2,152.07 |

2

**Fiduciary Accounting for Year Ended December 31, 2004**

### Schedule B
### Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 1/13/2004 | | $ 1,885.46 | $ 1,885.49 |
| Child support $500.00 Jan | | | | |
| ~~██████████~~ | | | | |
| ~~FL ████ $20.00~~ | | | | |
| Shoes $96.28 | | | | |
| Trans title to FL $179.85 | | | | |
| Fees to bring car $324.24 | | | | |
| Donna Roberts C.P.A. | 1/13/2004 | $ 240.00 | | 240.00 |
| Correspondence, accounting | | | | |
| and set-up of Trust | | | | |
| Rosemarie Re-Reimbursement | 2/4/2004 | | $ 913.62 | 913.65 |
| Child support $500.00 Feb | | | | |
| ~~Medi████████████~~ | | | | |
| ~~Car repair ██████~~ | | | | |
| Year Book $47.00 | | | | |
| Graph calculator for school $99.96 | | | | |
| Donna Roberts C.P.A. | 2/5/2004 | $ 200.00 | | 200.00 |
| Preparation Form 1041 | | | | |
| Rosemarie Re-Reimbursement | 3/4/2004 | | $ 777.05 | 777.05 |
| Joseph DeCiantis, Atty $182.50 | | | | |
| YMCA Membership $20.00 | | | | |
| Medical Ins $20.00 | | | | |
| Child support $500.00 Mar | | | | |
| ~~████████ car to FL $54.55~~ | | | | |
| Minimum bal fee for prior month | 4/2/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 4/20/2004 | | $ 778.02 | 778.02 |
| ~~Dr visit ████████████~~ | | | | |
| YMCA Membership $20.00 | | | | |
| ~~Medical ███ $20.00~~ | | | | |
| Child support $500.00 Apr | | | | |
| Carl Ins $209.74 | | | | |
| Minimum bal fee for prior month | 5/4/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 5/11/2004 | | $ 1,400.10 | 1,400.10 |
| Teen Court $50.00 | | | | |
| YMCA Membership $20.00 | | | | |
| ~~Medi████████████~~ | | | | |
| Child support $500.00 May | | | | |
| Venice High School Weight Lifting $75.00 | | | | |
| ~~Car Ins $56.10~~ | | | | |
| Donna Roberts C.P.A. | 5/11/2004 | $ 150.00 | | 150.00 |
| Accounting svcs thru 5/11/04 | | | | |

3

**Randall George Re, II Trust**
**Fiduciary Accounting for Year Ended December 31, 2004**

### Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| ▓▓▓▓▓▓▓▓▓ | 5/20/2004 | | $ ▓▓▓▓▓ | 5,000.00 |
| Rosemarie Re-Reimbursement | 5/24/2004 | | $ 1,240.76 | 1,240.76 |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓▓▓ | | | | |
| Child support $500.00 Jun | | | | |
| Bal of car purchase $700.76 | | | | |
| Amanda Re | 5/24/2004 | | $ 900.00 | 900.00 |
| Furniture | | | | |
| Minimum bal fee for prior month | 6/2/2004 | | $ 30.00 | 30.00 |
| Minimum bal fee for prior month | 7/2/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 7/6/2004 | | $ 1,215.80 | 1,215.80 |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓▓ | | | | |
| Teen Court $50.00 | | | | |
| Bal for wrestling camp $50.00 | | | | |
| ▓▓▓▓▓▓▓ | | | | |
| Loan for gas & work clothes $75.00 | | | | |
| Food for wrestling camp $136.19 | | | | |
| Child support $500.00 Jul | | | | |
| Rosemarie Re-Reimbursement | 7/28/2004 | | $ 1,241.20 | 1,241.20 |
| YMCA Membership $20.00 | | | | |
| Medical ▓▓▓▓ | | | | |
| Trip to IL for child support $242.91 | | | | |
| Verizon Wireless - phone $203.29 | | | | |
| Verizon Wireless additional min $75.00 | | | | |
| Child support $500.00 Aug | | | | |
| SCTI technology fee $150.00 | | | | |
| Minimum bal fee for prior month | 8/3/2004 | | $ 30.00 | 30.00 |
| Minimum bal fee for prior month | 9/2/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 9/8/2004 | | $ 747.65 | 747.65 |
| YMCA Membership $20.00 | | | | |
| Medical ▓▓▓▓▓0 | | | | |
| Travel to Chicago for 503G TR $457.65 | | | | |
| Furniture for apt $150.00 | | | | |
| Living expenses $100.00 Sep | | | | |

Randall George Re, II Trust
Fiduciary Accounting for Year Ended December 31, 2004

## Schedule B
## Disbursements
## Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 9/22/2004 | | $   2,560.00 | 2,560.00 |
| YMCA Membership $20.00 | | | | |
| ~~redacted~~ | | | | |
| Washer & Dryer $100.00 | | | | |
| Furniture for apt $167.73 | | | | |
| Cash for misc apt items $50.00 | | | | |
| Clothing $41.81 | | | | |
| Club Side Apartments $430.00 deposit | | | | |
| Club Side Apartments $583.55 Oct rent | | | | |
| Cash for living expenses $500.00 | | | | |
|   (food, supplies, setup apt., etc) | | | | |
| Replace 1st of 3 windows broken $143.00 | | | | |
| Window installation $75.00 | | | | |
| Electric deposit $150.00 | | | | |
| Living expenses $400.00 Sep | | | | |
| Minimum bal fee for prior month | 10/4/2004 | | $     30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 10/20/2004 | | $    535.09 | 535.09 |
| Short movers-move Randy | | | | |
| Clubside Apts Nov rent | 10/20/2004 | | $    675.00 | 675.00 |
| Rosemarie Re-Reimbursement | 10/20/2004 | | $    690.00 | 690.00 |
| YMCA Membership $20.00 | | | | |
| ~~redacted~~ | | | | |
| Furniture for apt $150.00 | | | | |
| Living expenses $500.00 Oct | | | | |
| Minimum bal fee for prior month | 11/2/2004 | | $     30.00 | 30.00 |
| ~~redacted~~ insurance | 11/17/2004 | | $  ~~redacted~~ | 909.89 |
| Minimum bal fee for prior month | 12/2/2004 | | $     30.00 | 30.00 |
| Clubside Apts Dec rent | 12/13/2004 | | $    675.00 | 675.00 |
| Rosemarie Re-Reimbursement | 12/15/2004 | | $    625.82 | 625.82 |
| ~~redacted~~ | | | | |
| YMCA Membership $20.00 | | | | |
| ~~redacted~~ | | | | |
| Florida Power & Light $53.97 | | | | |
| Florida Power & Light $51.86 | | | | |
| Vacuum cleaner $89.99 | | | | |
| Deposit on Sr. pictures $150.00 | | | | |
| Dec '04 exp. Child support shortfall $150.00 | | | | |
| Year book $45.00 | | | | |
| Donna Roberts C.P.A. | 12/16/2004 | $   210.00 | | 210.00 |
| Accounting fees | | | $ | 23,840.32 |

**Randall George Re, II Trust**

**Fiduciary ⬤counting for Year Ended Decem⬤ 31, 2005**

## Summary

|  | Income | | Principal | | Total | |
|---|---|---|---|---|---|---|
| Beginning Assets |  |  |  |  | $ | 7,144.30 |
| Receipts - Schedule A | $ | 4.77 |  |  |  | 4.77 |
| Disbursements - Schedule B | $ | 222.48 | $ | 6,926.59 |  | 7,149.07 |
| Ending Assets - Wachovia Bank |  |  |  |  | $ | - |

## Schedule A
## Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Sweep Dividends | 1/31/2005 | $ 0.23 | | $ 0.23 |
| Interest Paid | 1/21/2005 | $ 0.88 | | 0.88 |
| Interest Paid | 2/17/2005 | $ 1.09 | | 1.09 |
| Interest Paid | 3/22/2005 | $ 1.15 | | 1.15 |
| Interest Paid | 4/20/2005 | $ 0.74 | | 0.74 |
| Interest Paid | 5/19/2005 | $ 0.49 | | 0.49 |
| Interest Paid | 6/22/2005 | $ 0.19 | | 0.19 |
| | | | | $ 4.77 |

Randall George Re, II Trust
Fiduciary Accounting for Year Ended December 31, 2005

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Club ███████████ rent · | 1/7/2005 | | $ 675.00 | $ 675.00 |
| Rosemarie Re-Reimbursement | 1/11/2005 | | $ 800.00 | 800.00 |
| YMCA Membership $20.00 | | | | |
| ████████ $86.00 | | | | |
| Late fee $85.00 | | | | |
| Rent $675.00  Feb | | | | |
| Harland Checks | 1/12/2005 | $ 8.00 | | 8.00 |
| Rosemarie Re-Reimbursement | 2/15/2005 | | $ 40.00 | 40.00 |
| YMCA Membership $20.00 | | | | |
| ██████████ | | | | |
| Clubside Apartments Mar rent | 2/1/2005 | | $ 675.00 | 675.00 |
| Rosemarie Re-Reimbursement | 3/7/2005 | | $ 427.34 | 427.34 |
| YMCA Membership $20.00 | | | | |
| ██████████ | | | | |
| Nextel $83.25 | | | | |
| Florida Power & Light $62.39 | | | | |
| Sam's, food $241.70 | | | | |
| Donna Roberts C.P.A. | 3/14/2005 | $ 200.00 | | 200.00 |
| '04 Tax prep Form 1041 | | | | |
| Clubside Apartments Apr rent | 4/1/2005 | | $ 675.00 | 675.00 |
| Rosemarie Re-Reimbursement | 4/5/2005 | | $ 430.90 | 430.90 |
| YMCA Membership $20.00 | | | | |
| ██████████ | | | | |
| Clubside water bill $99.53 | | | | |
| Clubside water bill $53.43 | | | | |
| Nextel Communications $66.16 | | | | |
| Collegeboard - SAT $62.85 | | | | |
| Nextel Communications $70.16 | | | | |
| Florida Power & Light $41.77 | | | | |
| Rosemarie Re-Reimbursement | 5/3/2005 | | $ 816.28 | 816.28 |
| YMCA Membership $20.00 | | | | |
| ██████████ | | | | |
| Rent $██████ | | | | |
| ████ $██.00 | | | | |
| Nextel Communications $85.00 | | | | |
| Florida Power & Light $41.28 | | | | |
| R██████████ | 5/3/2005 | | $ ████ | 1,061.90 |
| ████████ Gelant | | | | |
| Rosemarie Re-Reimbursement | 5/3/2005 | | $ 150.00 | 150.00 |
| Prom expenses | | | | |
| Service fee | 5/19/2005 | | $ 10.00 | 10.00 |

3

## Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement YMCA Membership $20.00 | 6/7/2005 | | $ 805.17 | 805.17 |
| Rent $600.00 Nextell Communications $73.35 Florida Power & Light $29.18 Nextell Communications $62.64 | | | | |
| Service fee | 6/22/2005 | | $ 10.00 | 10.00 |
| Rosemarie Re-Reimbursement | 7/6/2005 | | $ 350.00 | 350.00 |
| Donna Roberts C.P.A. Accounting fee | 7/6/2005 | $ 14.48 | | 14.48 |
| | | | | $ 7,149.07 |

4

**Fiduciary Accounting for Year Ended December 31, 2003**

### Summary

| | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets | | | $ - |
| Receipts - Schedule A | $ 42.76 | $ 48,686.74 | 48,729.50 |
| Disbursements - Schedule B | $ 565.00 | $ 18,469.94 | 19,034.94 |
| Ending Assets - Wachovia Bank | | | $ 29,694.56 |

EXPENDITURES
APPROXIMATE AMOUNTS

Vehicle ~~Expense~~ —— $2,400.

Child Support —— 21,600

~~————~~ ~~Expense~~ —— 23,200

$47,200

1

EX "K"

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2003**

### Schedule A
### Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Funding of account | 7/25/2003 | | $ 48,686.74 | $ 48,686.74 |
| Cap Account Interest | 7/31/2003 | $ 1.26 | | 1.26 |
| Cap Account Interest | 8/29/2003 | $ 9.20 | | 9.20 |
| Cap Account Interest | 9/30/2003 | $ 8.61 | | 8.61 |
| Cap Account Interest | 10/31/2003 | $ 8.57 | | 8.57 |
| Cap Account Interest | 11/28/2003 | $ 8.14 | | 8.14 |
| Cap Account Interest | 12/31/2003 | $ 6.98 | | 6.98 |
| | | | | $ 48,729.50 |

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2003**

### Schedule B
### Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement<br>Disney tickets - 4 day pass $116.09<br>YMCA Summer Camp $210.00<br>YMCA Summer Camp $20.00<br>YMCA Summer Camp $35.00<br>YMCA Summer Camp $35.00<br>YMCA Summer Camp $35.00 | 7/28/2003 | | $ 451.09 | $ 451.09 |
| Re—————————ment | 7/28/2003 | | $ ▓▓▓▓▓ | 2,250.00 |
| Rosemarie Re-Reimbursement<br>YMCA Summer Camp $65.00<br>▓▓▓▓▓▓▓▓▓▓▓▓▓<br>▓▓▓▓▓▓ sports physical $40.00 | 8/5/2003 | | $ 405.00 | 405.00 |
| Muirhead Gaylor & Steves LLP<br>Tel conferences & prep of Resignation<br>and Acceptance of Trust | 8/14/2003 | $ 325.00 | | 325.00 |
| Donna Roberts C.P.A.<br>TTEE fees thru 7/31/03 | 8/6/2003 | $ 240.00 | | 240.00 |
| Rosemarie Re<br>Child support for 5 months @ $400 | 8/6/2003 | | $ 2,000.00 | 2,000.00 |
| Rosemarie Re-Reimbursement<br>▓▓▓▓.00<br>▓▓▓▓.00<br>▓▓▓▓.00<br>▓▓▓▓.00<br>Bealls, school clothes $189.36<br>YMCA Summer Camp $35.00<br>YMCA Summer Camp $35.00<br>Venice Middle School Supply<br>kit $28.00<br>Venice Middle School fee for<br>for books $10.00 ▓▓▓▓▓▓<br>▓▓▓▓▓▓▓▓▓▓▓▓▓<br>Child support $400 Sep<br>Venice Vikings Football Jersey $35.00<br>Venice Vikings football after<br>game drinks $10.00 | 9/15/2003 | | $ 1,382.36 | 1,382.36 |

3

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2003**

## Schedule B
## Disbursements

## Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 10/10/2003 | | $ ▓▓▓▓ | 1,000.00 |
| Child support $500.00 Oct | | | | |
| Rosemarie Re-Reimbursement | 11/7/2003 | | $ 1,100.00 | 1,100.00 |
| Child support $500.00 Nov | | | | |
| Dr. Cortman $600.00 | | | | |
| Rosemarie Re-Reimbursement | 12/10/2003 | | $ ▓▓▓▓ | 9,061.50 |
| Rosemarie medical expenses | | | | |
| Rosemarie Re-Reimbursement | 12/26/2003 | | $ 820.00 | 820.00 |
| Child support $500.00 Dec | | | | |
| Medical insurance $20.00 | | | | |

|  |  | $ | 19,034.95 |
|---|---|---|---|

4

Fiduciary Accounting for Year Ended December 1, 2004

## Summary

|  | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets |  |  | $ 29,694.55 |
| Receipts - Schedule A | $ 58.21 | $ 2,106.52 | 2,164.73 |
| Disbursements - Schedule B | $ 740.00 | $ 15,228.51 | 15,968.51 |
| Ending Assets - Wachovia Bank |  |  | $ 15,890.77 |

1

**Fiduciary Accounting for Year Ended December 31, 2004**

### Schedule A
### Receipts

| Description | Date | Income | | Principal | | Total | |
|---|---|---|---|---|---|---|---|
| Cap Account Interest | 1/30/2004 | $ | 6.17 | | | $ | 6.17 |
| Cap Account Interest | 2/27/2004 | $ | 5.54 | | | | 5.54 |
| Cap Account Interest | 3/31/2004 | $ | 5.08 | | | | 5.08 |
| Cap Account Interest | 4/30/2004 | $ | 4.54 | | | | 4.54 |
| Cap Account Interest | 5/28/2004 | $ | 4.47 | | | | 4.47 |
| Cap Account Interest | 6/30/2004 | $ | 3.98 | | | | 3.98 |
| Cap Account Interest | 7/30/2004 | $ | 4.06 | | | | 4.06 |
| Cap Account Interest | 8/31/2004 | $ | 3.75 | | | | 3.75 |
| Cap Account Interest | 9/30/2004 | $ | 3.87 | | | | 3.87 |
| Cap Account Interest | 10/29/2004 | $ | 4.84 | | | | 4.84 |
| Cap Account Interest | 11/30/2004 | $ | 5.10 | | | | 5.10 |
| Minimum bal fee refund | 12/2/2004 | | | $ | 30.00 | | 30.00 |
| Deposit-Reimbursement from 503(G) Trust | 12/17/2004 | | | $ | 2,076.52 | | 2,076.52 |
| Cap Account Interest | 12/31/2004 | $ | 6.81 | | | | 6.81 |
| | | | | | | $ | 2,164.73 |

2

**Russell Garrett Re Trust**

Fiduciary Accounting for Year Ended December 31, 2004

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 1/13/2004 | | $ 696.50 | $ 696.50 |
| Jan child support $500.00 | | | | |
| ████████████████ | | | | |
| YMCA basketball team $26.50 | | | | |
| Donna Roberts C.P.A. | 1/13/2004 | $ 180.00 | | 180.00 |
| TTEE fees thru 12/31/03 | | | | |
| Rosemarie Re-Reimbursement | 2/4/2004 | | $ 690.00 | 690.00 |
| Child support Feb $500.00 | | | | |
| ████████████████ | | | | |
| Donna Roberts C.P.A. | 2/5/2004 | $ 200.00 | | 200.00 |
| Tax preparation Form 1041 | | | | |
| Rosemarie Re-Reimbursement | 3/7/2004 | | $ 840.00 | 840.00 |
| YMCA Membership $20.00 | | | | |
| Child support $500.00 | | | | |
| ████████████████ S | 3/7/2004 | | ████████ | 4,446.00 |
| Minimum bal fee for prior month | 4/2/2006 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 4/20/2004 | | $ 690.00 | 690.00 |
| YMCA Membership $20.00 | | | | |
| Child support $500.00 | | | | |
| Minimum bal fee for prior month | 5/4/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 5/11/2004 | | $ 915.00 | 915.00 |
| Health Insurance $20.00 | | | | |
| Venice High School Weight Lifting $75.00 | | | | |
| Child support $500.00 | | | | |
| Donna Roberts C.P.A. | 5/11/2004 | $ 150.00 | | 150.00 |
| Accounting services thru 5-11-04 | | | | |
| Rosemarie Re-Reimbursement | 5/21/2004 | | $ 840.00 | 840.00 |
| YMCA Membership $20.00 | | | | |
| Child support $500.00 | | | | |
| Minimum bal fee for prior month | 6/2/2004 | | $ 30.00 | 30.00 |
| Minimum bal fee for prior month | 7/2/2004 | | $ 30.00 | 30.00 |

3

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2004**

### Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 7/6/2004 | | $ 840.00 | 840.00 |
| ▓▓▓▓▓▓▓▓▓▓▓▓ | | | | |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓▓▓▓ | | | | |
| Child support $500.00 | | | | |
| Rosemarie Re-Reimbursement | 7/28/2004 | | $ 1,257.43 | 1,257.43 |
| ▓▓▓▓▓▓▓▓▓▓▓▓ | | | | |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓ | | | | |
| Life Teen - Adventure Island $27.00 | | | | |
| Life Teen - Universal Studios $36.00 | | | | |
| Life Teen - Retreat Weekend $25.00 | | | | |
| Venice High School - Football Shoes $60.00 | | | | |
| Trip to Illinois for Child Support $242.91 | | | | |
| New cell phone $176.52 | | | | |
| Child support $500.00 | | | | |
| Minimum bal fee for prior month | 8/3/2004 | | $ 30.00 | 30.00 |
| Minimum bal fee for prior month | 9/2/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 9/7/2004 | | $ 1,547.65 | 1,547.65 |
| ▓▓▓▓▓▓▓▓▓▓ | | | | |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓▓ | | | | |
| Trip to Illinois for Child Support $457.65 | | | | |
| Child support Expenses $500.00 | | | | |
| New clothes for school $250.00 | | | | |
| Minimum bal fee for prior month | 10/4/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 10/20/2004 | | $ 840.00 | 840.00 |
| ▓▓▓▓▓▓▓▓▓ | | | | |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓ | | | | |
| Child support $500.00 | | | | |
| Minimum bal fee for prior month | 11/2/2004 | | $ 30.00 | 30.00 |
| Rosemarie Re-Reimbursement | 11/5/2004 | | $ 915.00 | 915.00 |
| ▓▓▓▓▓▓▓▓▓▓ | | | | |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓ | | | | |
| Child support $500.00 | | | | |
| Wrestling sign up $75.00 | | | | |
| Minimum bal fee for prior month | 12/2/2004 | | $ 30.00 | 30.00 |

4

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2004**

### Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 12/15/2004 | | $    440.93 | 440.93 |
| ▓▓▓▓▓▓▓▓▓ | | | | |
| YMCA Membership $20.00 | | | | |
| ▓▓▓▓▓▓▓▓▓ 00 | | | | |
| December 2004 exp $150.00 | | | | |
| Advance for soccer shoes $100.00 | | | | |

                                                    $    15,968.51

**Russell Garrett Re Trust**

**Fiduciary Accounting for Year Ended December 31, 2005**

## Summary

|  | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets |  |  | $ 15,890.77 |
| Receipts - Schedule A | $ 125.56 |  | 125.56 |
| Disbursements - Schedule B | $ 216.00 | $ 8,608.00 | 8,824.00 |
| Ending Assets - Wachovia Bank |  |  | $ 7,192.33 |

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2005**

## Schedule A
## Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Sweep Dividends | 1/31/2005 | $ 0.52 | $ | 0.52 |
| Interest Paid | 1/21/2005 | $ 8.58 | | 8.58 |
| Interest Paid | 2/17/2005 | $ 12.25 | | 12.25 |
| Interest Paid | 3/22/2005 | $ 13.78 | | 13.78 |
| Interest Paid | 4/20/2005 | $ 11.75 | | 11.75 |
| Interest Paid | 5/18/2005 | $ 12.64 | | 12.64 |
| Interest Paid | 6/22/2005 | $ 15.95 | | 15.95 |
| Interest Paid | 7/21/2005 | $ 13.57 | | 13.57 |
| Interest Paid | 8/19/2005 | $ 13.50 | | 13.50 |
| Interest Paid | 9/22/2005 | $ 15.43 | | 15.43 |
| Interest Paid | 10/21/2005 | $ 2.70 | | 2.70 |
| Interest Paid | 11/21/2005 | $ 2.59 | | 2.59 |
| Interest Paid | 12/21/2005 | $ 2.30 | | 2.30 |
| | | | $ | 125.56 |

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2005**

### Schedule B
### Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement ██████████████.00 YMCA Membership $20.00 ██████ Child support $500.00 Year Book $47.00 | 1/11/2005 | | $ 737.00 | $ 737.00 |
| Harland Checks | 1/12/2005 | $ 8.00 | | 8.00 |
| Rosemarie Re-Reimbursement ████████████.00 YMCA Membership $20.00 ██████████ Child support $500.00 | 2/15/2005 | | $ 990.00 | 990.00 |
| Rosemarie Re-Reimbursement ████████████.00 YMCA Membership $20.00 ██████████ Child support $500.00 | 3/7/2005 | | $ 690.00 | 690.00 |
| Donna Roberts C.P.A. Preparation 2004 Form 1041 | 3/14/2005 | $ 200.00 | | 200.00 |
| Rosemarie Re-Reimbursement ████████████.00 YMCA Membership $20.00 ███████ Child support $500.00 ███████████ | 4/5/2005 | | $ 914.00 | 914.00 |
| Rosemarie Re-Reimbursement ████████████.00 YMCA Membership $20.00 █████████████ Child support $500.00 | 5/3/2005 | | $ 840.00 | 840.00 |
| Rosemarie Re-Reimbursement ███████.00 YMCA Membership $20.00 ████████.00 Child support $500.00 | 6/7/2005 | | $ 595.00 | 595.00 |
| Rosemarie Re-Reimbursement Child support $500.00 | 7/6/2005 | | $ 500.00 | 500.00 |

3

**Russell Garrett Re Trust**
**Fiduciary Accounting for Year Ended December 31, 2005**

### Schedule B
### Disbursements
### Continued

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Rosemarie Re-Reimbursement | 9/14/2005 | | $ 842.00 | 842.00 |
| ~~Dr. Christopher Cortman $150.00~~ | | | | |
| YMCA Membership $20.00 | | | | |
| ~~Health Insurance $20.00~~ | | | | |
| Child support $500.00 | | | | |
| ~~Dental $45.00~~ | | | | |
| ~~Medication $15.00~~ | | | | |
| Church Youth Group $38.00 | | | | |
| summer camp $24.00 | | | | |
| Rosemarie Re-Reimbursement | 11/3/2005 | | $ 1,500.00 | 1,500.00 |
| Child support Sept, Oct, Nov | | | | |
| Rosemarie Re-Reimbursement | 12/6/2005 | | $ 1,000.00 | 1,000.00 |
| Child support Dec, Jan | | | | |
| Harland Checks | 12/21/2005 | $ 8.00 | | 8.00 |
| | | | $ | 8,824.00 |

4

# Russell Garrett Re Trust
## Fiduciary Accounting for Year Ended December 31, 2006

### Summary

|  | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets |  |  | $ 7,192.33 |
| Receipts - Schedule A | $ 12.51 | $ 1,376.52 | 1,389.03 |
| Disbursements - Schedule B | $ 535.42 | $ 8,045.94 | 8,581.36 |
| Ending Assets - Wachovia Bank |  |  | $ - |

## Russell Garrett Re Trust
## Fiduciary Accounting for Year Ended December 31, 2006

### Schedule A
### Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Interest Paid | 1/23/2006 | $ 2.26 | $ | 2.26 |
| Interest Paid | 2/17/2006 | $ 1.60 | | 1.60 |
| Interest Paid | 3/22/2006 | $ 1.97 | | 1.97 |
| Interest Paid | 4/20/2006 | $ 1.58 | | 1.58 |
| Interest Paid | 5/22/2006 | $ 1.55 | | 1.55 |
| Interest Paid | 6/21/2006 | $ 1.02 | | 1.02 |
| Interest Paid | 7/24/2006 | $ 0.94 | | 0.94 |
| Interest Paid | 8/22/2006 | $ 0.66 | | 0.66 |
| 503(g) Reim for Health Insurance | 9/20/2006 | | $ 1,376.52 | 1,376.52 |
| Interest Paid | 9/21/2006 | $ 0.63 | | 0.63 |
| Interest Paid | 10/23/2006 | $ 0.19 | | 0.19 |
| Interest Paid | 11/21/2006 | $ 0.06 | | 0.06 |
| Interest Paid | 12/20/2006 | $ 0.03 | | 0.03 |
| Interest Paid | Accrual | $ 0.02 | | 0.02 |
| | | | $ | 1,389.03 |

2

## Russell Garrett Re Trust
## Fiduciary Accounting for Year Ended December 31, 2006

### Schedule B
### Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Donna M. Roberts C.P.A. Trustee fees and preparation of fiduciary accounting | 1/19/2006 | $ 240.00 | | $ 240.00 |
| Rosemarie Re Child support | 2/1/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support | 3/1/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support | 4/3/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support | 5/2/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support | 6/14/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support | 7/7/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support Aug & Sept | 8/2/2006 | | $ 1,000.00 | 1,000.00 |
| Rosemarie Re ▮▮▮▮▮▮▮▮▮▮ Soccer expense $361.37 ▮▮▮▮▮▮ | 9/20/2006 | | $ ▮▮▮▮▮ | 3,045.94 |
| Rosemarie Re Child support | 10/3/2006 | | $ 500.00 | 500.00 |
| Rosemarie Re Child support | 11/8/2006 | | $ 500.00 | 500.00 |
| Donna M. Roberts C.P.A. Trustee fees | Accrual | $ 200.00 | | 200.00 |
| Donna M. Roberts C.P.A. Prep. of accounting for court | Accrual | $ 95.42 | | 95.42 |
| | | | | $ 8,581.36 |

# Donna M. Roberts, C.P.A.
### Certified Public Accountant

_____

1515 Tamiami Trail South
Southbridge Park, Suite 4
Venice, Florida 34285

February 7, 2007

Office of the Circuit Court Clerk
P.O. Box 707
Wheaton, IL 60198-0707

RE:  Re Children's 503 (G) Trust

Dear Sir or Madam:

Enclosed please find the 2006 annual fiduciary accounting for the above named trust as
required by Section 6 of the trust document.

If you have any questions relative to the accounting or trust administration, please do not
hesitate to call me at 941.492.2010.

Very truly yours,

Donna M. Roberts, Trustee

CC:  Randall Re
        Reg. No. 14617-424
        FCI Milan
        P.O. Box 1000
        Milan, MI 48160

Phone: 941/492-2010        Fax: 941/492-6786        E-Mail: dmrcpa@ewol.com

Ex "L"

**Re Children's 503 (G) Trust**
**Fiduciary Accounting for Year Ended December 31, 2006**

## Summary

|  | Income | Principal | Total |
|---|---|---|---|
| Beginning Assets |  |  | $ 38,673.55 |
| Receipts - Schedule A | $ 970.52 |  | 970.52 |
| Disbursements - Schedule B | $ 2,145.00 | $ 1,393.52 | 3,538.52 |
| Ending Assets - Wachovia Bank |  |  | $ 36,105.55 |

1

**Re Children's 503(G) Trust**
**Fiduciary Accounting for Year Ended December 31, 2006**

### Schedule A
### Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Interest Paid | 1/27/2006 | $ 66.11 | $ | 66.11 |
| Interest Paid | 2/24/2006 | $ 59.78 | | 59.78 |
| Interest Paid | 3/28/2006 | $ 79.28 | | 79.28 |
| Interest Paid | 4/26/2006 | $ 114.53 | | 114.53 |
| Interest Paid | 5/26/2006 | $ 118.85 | | 118.85 |
| Interest Paid | 6/27/2006 | $ 116.90 | | 116.90 |
| Interest Paid | 7/28/2006 | $ 71.61 | | 71.61 |
| Interest Paid | 8/28/2006 | $ 73.88 | | 73.88 |
| Interest Paid | 9/27/2006 | $ 70.87 | | 70.87 |
| Interest Paid | 10/27/2006 | $ 66.70 | | 66.70 |
| Interest Paid | 11/28/2006 | $ 69.45 | | 69.45 |
| Interest Paid | 12/27/2006 | $ 62.56 | | 62.56 |
| | | | $ | 970.52 |

2

**Re Children's 503(G) Trust**
**Fiduciary Accounting for Year Ended December 31, 2006**

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Donna M. Roberts CPA Trustee fees | 1/18/2006 | $ 120.00 | | $ 120.00 |
| U. S. Treasury 2005 Taxes | 1/31/2006 | | $ 17.00 | 17.00 |
| Donna M. Roberts CPA Preparation of 2005 503(g)1041 Preparation of Fiduciary Accounting | 2/5/2006 | $ 375.00 | | 375.00 |
| Donna M. Roberts CPA Preparation of 2003, 2004 & 2005 1041 and Fiduciary Accounting for: | | | | |
| – Amanda Re Trust | 2/6/2006 | $ 550.00 | | 550.00 |
| – Randall Re Trust | 2/6/2006 | $ 550.00 | | 550.00 |
| – Russell Re Trust | 2/6/2006 | $ 550.00 | | 550.00 |
| Russell Re Trust Reimbursement for medical insurance per documents | 9/20/2006 | | $ 1,376.52 | 1,376.52 |
| | | | $ | 3,538.52 |

3

# Donna M. Roberts, C.P.A.
## Certified Public Accountant

1515 Tamiami Trail South
Southbridge Park, Suite 4
Venice, Florida 34285

February 28, 2008

Office of the Circuit Court Clerk
P.O. Box 707
Wheaton, IL 60198-0707

RE:  Re Children's 503 (G) Trust

Dear Sir or Madam:

Enclosed please find the 2007 annual fiduciary accounting for the above named trust as required by Section 6 of the trust document.

If you have any questions relative to the accounting or trust administration, please do not hesitate to call me at 941.492.2010.

Very truly yours,

Donna M. Roberts, Trustee

CC:  Randall Re
     Reg. No. 14617-424
     FCI Milan
     P.O. Box 1000
     Milan, MI 48160

**Re Children's 503 (G) Trust**
**Fiduciary Accounting for Year Ended December 31, 2007**

## Summary

|  | Income | | Principal | | Total |
|---|---|---|---|---|---|
| Beginning Assets |  |  |  | $ | 36,105.55 |
| Receipts - Schedule A | $ | 353.32 |  |  | 353.32 |
| Disbursements - Schedule B | $ | 640.00 | $ | 17,420.00 | 18,060.00 |
| Ending Assets - Wachovia Bank |  |  |  | $ | 18,398.87 |

1

● **Re Children's 503(G) Trust** ●
**Fiduciary Accounting for Year Ended December 31, 2007**

## Schedule A
## Receipts

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Interest Received | 1/29/2007 | $ 69.56 | $ | 69.56 |
| Interest Received | 2/26/2007 | $ 53.40 | | 53.40 |
| Interest Received | 3/27/2007 | $ 28.08 | | 28.08 |
| Interest Received | 4/26/2007 | $ 27.88 | | 27.88 |
| Interest Received | 5/29/2007 | $ 28.59 | | 28.59 |
| Interest Received | 6/27/2007 | $ 24.49 | | 24.49 |
| Interest Received | 7/27/2007 | $ 24.73 | | 24.73 |
| Interest Received | 8/27/2007 | $ 23.02 | | 23.02 |
| Interest Received | 9/26/2007 | $ 19.68 | | 19.68 |
| Interest Received | 10/29/2007 | $ 21.35 | | 21.35 |
| Interest Received | 11/28/2007 | $ 17.52 | | 17.52 |
| Interest Received | 12/27/2007 | $ 15.02 | | 15.02 |
| | | | $ | 353.32 |

2

Re Children's 503(G) Trust
# Fiduciary Accounting for Year Ended December 31, 2007

## Schedule B
## Disbursements

| Description | Date | Income | Principal | Total |
|---|---|---|---|---|
| Donna M. Roberts CPA<br>Trustee fees | 2/5/2007 | $ 240.00 | | $ 240.00 |
| Donna M. Roberts CPA<br>Tax Prep & Fiducial Accounting | 2/5/2007 | 400.00 | | 400.00 |
| Rosemarie Re<br>Child Support Dec '06, Jan '07,<br>Feb '07, Mar '07 | 2/20/2007 | | $ 2000.00 | 2000.00 |
| Russell Re Trust<br>Reim. For Child Support<br>Apr '05  2 x $350<br>May '06  12 x 500<br>Jun '07  10 x 500 | 2/21/2007 | | 11700.00 | 11700.00 |
| Rosemarie Re<br>Child Support Apr '07 ~ July '07 | 4/12/2007 | | 2000.00 | 2000.00 |
| Rosemarie Re<br>Medical Insurance Reim<br>Feb - July @ $120 | 5/15/2007 | | 720.00 | 720.00 |
| Rosemarie Re<br>Child Support Jan '08, Feb '08 | 12/19/2007 | | 1000.00 | 1000.00 |
| | | $ 640.00 | $ 17420.00 | $ 18060.00 |

3

STATE OF ILLINOIS
COUNTY OF DU PAGE
IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

IN RE MARRIAGE OF:

ROSE MARIE RE        Petitioner

and

RANDALL RE

Respondent

Case Number  97 D 285

Support Account Number  01CJ1198

I.D.P.A. Number

FILE STAMP HERE

2004 APR 13 PM 3:49

☐ IDPA is or has been granted leave to intervene.

## ORDER FOR SUPPORT

☐ ORIGINAL ORDER        ☒ AMENDED ORDER

**DEFINITIONS:**

**OBLIGOR:** An individual who owes a duty to make support payments pursuant to an order of support.

**OBLIGEE:** An individual to whom a duty of support is owed or the individual's legal representative.

**PAYOR:** Any payor of income to an obligor.

**UNALLOCATED SUPPORT:** A total amount for maintenance and child support and not a specific amount for either.

**THE COURT FINDS:**

☐ The net income of the obligor on the date of this order is $ _____ per _____

☒ The amount of child support cannot be expressed exclusively as a dollar amount because all or a portion of the obligor's net income is uncertain as to source, time of payment, or amount.

**IT IS HEREBY ORDERED THAT:** DONNA ROBERTS, trustee

RANDALL RE c/o _____ the OBLIGOR, is to provide:

☒ CHILD SUPPORT        ☐ MAINTENANCE        ☐ UNALLOCATED SUPPORT

☐ PERCENTAGE AMOUNT OF CHILD SUPPORT

## PAYMENT ARRANGEMENTS (CHECK ONE ONLY)

### (PAYMENTS MUST BE SENT TO THE STATE DISBURSEMENT UNIT IF THIS BOX IS CHECKED)

☐ A Notice to Withhold Income shall issue immediately and shall be served on the employer at the address listed in this Order. Any subsequent employer may be served with a Notice to Withhold Income without further order of the Court. Payments shall be made payable to STATE DISBURSEMENT UNIT and sent to P.O. Box 5400, Carol Stream, IL, 60197-5400. Payment must include CASE NUMBER and DuPage County which is the Issuing Court of this Order along with obligor's name and social security number.

ORIGINAL: Circuit Clerk        COPIES TO: Plaintiff, Respondent, and Attorneys

JOEL A. KAGANN, CLERK OF THE EIGHTEENTH JUDICIAL CIRCUIT COURT
WHEATON, ILLINOIS 60189-0707

**EXHIBIT**
"M"

PAYMENT ARRANGEMENTS (continued)  CASE# 97D285

☐ The parties have entered into a written agreement providing for an alternate arrangement for the payment of support that is approved by the Court and attached to this Order, meeting all requirements of, and consistent with applicable law. An income withholding notice with payments through the SDU shall be prepared by the obligee or the obligee's legal representative and served only if the obligor becomes delinquent in paying the order for support. Payments shall be made in accordance with the written agreement of the parties attached hereto,

OR

☒ State law does not require payment to the State Disbursement Unit and the parties have not entered into a written agreement as provided above. Payment shall be made to the **Clerk of the Circuit Court** and mailed to **P.O. Box 707, Wheaton, IL 60189-0735.** Payment must include CASE NUMBER, ACCOUNT NUMBER and DuPage County which is the Issuing Court of this Order along with obligor's name and social security number.

AND

☒ The **Obligor** shall, in addition to and separate from the amounts ordered to be paid as maintenance or child support, pay an annual fee of $36.00 for the administration of this account as set forth in 705 ILCS 105/27.2 (bb4). This fee shall be due and payable upon receipt of an invoice from the Circuit Court Clerk. Payment of this invoice shall be made payable to The Clerk of the Circuit Court. The payment shall be clearly marked "Annual Fee for YEAR_____" and sent to **The Clerk of the Circuit Court, P.O. Box 707, Wheaton, IL 60189-0735.**

## PAYMENT SCHEDULES

The Child Support payment terminates on __8/22/2009__ unless modified by a written order of court. Insert a date above no earlier than the date the youngest child reaches the age of 18. This termination date does not apply to any arrearage that may remain unpaid at that date.

### PAYMENT AMOUNT

Current Payment $ 700.00

Arrearage Payment $ 0

PAYMENTS TO BEGIN ON:

DATE MAY 15, 2004

| DESCRIPTION | AMOUNT | FREQUENCY | START DATE | MANDATORY END DATE REQUIRED | BEGIN BALANCE IF APPLICABLE | AS OF DATE IF APPLICABLE |
|---|---|---|---|---|---|---|
| MAINTENANCE | | | | | | |
| UNALLOCTED SUPPORT | | | | | | |
| CHILD SUPPORT | 700.00 | monthly | 5/19/04 | 1/19/05 | | |
| Child Support | 500.00 | monthly | 2/19/05 | 8/22/09 | | |
| % AMOUNT OF CHILD SUPPORT | | | | | | |
| MEDICAL INSURANCE | | | | | | |
| ARREARAGE IS SET AT | | | | | | |
| *PAYMENT IF FOR OTHER SPECIFY | | | | | | |
| TOTAL AMOUNT DUE PER PAYMENT | | | | | | |

## PAYMENT MUST BE IN U.S. DOLLARS AND CENTS

| DELINQUENCY | | | | | | |
|---|---|---|---|---|---|---|

"DELINQUENCY" PAYMENT AMOUNT MUST BE INCLUDED AND SHALL NOT BE LESS THAN 20% OF CURRENT SUPPORT AND ARREARAGE PAYMENTS COMBINED.

## DELINQUENCY

CASE# 97D285

If the obligor becomes delinquent in the payment of support after the entry of this Order for Support, the obligor must pay, in addition to the current support obligation, the sum of $ _____ for child support and/or maintenance or unallocated support per the payment frequency ordered above until the delinquency is paid in full. This additional amount shall not be less than twenty percent (20%) of the total of the current support amount and the amount to be paid periodically for payment of any arrearage stated in the Order for Support. A support obligation, or any portion of a support obligation which becomes due and remains unpaid for 30 days or more shall accrue interest at the rate of nine percent (9%) per annum. Interest due and owing as a result of unpaid support will be set forth under "Additional Conditions or Findings" in this Order for Support or in a separate Order.

**EMPLOYER: YOU DO NOT HAVE TO VARY YOUR PAY CYCLE TO BE IN COMPLIANCE WITH THE SUPPORT ORDER. IF YOUR PAY CYCLE DOES NOT MATCH THE ORDERED SUPPORT FREQUENCIES, USE THE FOLLOWING TO DETERMINE HOW MUCH TO WITHHOLD.**

| $ | weekly pay period (52 or 53) times per year | $ | semi-monthly pay period (24) times per year |
|---|---|---|---|
| $ | bi-weekly pay period (26) times per year | $ | monthly pay period (12) times per year |

**COMPLETE THIS SECTION ONLY IF PAYMENTS ARE TO BE MADE TO A PARTY OTHER THAN THE OBLIGE SUCH AS PAYMENTS TO: IDPA, INTERVENOR, GUARDIAN, ESCROW, ETC.**

| NAME/AGENCY | | ADDRESS | | REFERENCE NO. |
|---|---|---|---|---|
| ELECTRON FUNDS TRANSFER | FIPS NUMBER | FAX-AREA CODE AND PHONE NO. | PHONE/AREA CODE AND PHONE NO. | INTERNET ADDRESS |

## INSURANCE

The ☒ Obligor ☐ Obligee ☐ Obligor and Obligee, shall provide health insurance for the child/children either by ☐ enrolling them in any health insurance coverage through the ☐ Obligor's ☐ Obligee's ☐ Obligor and Obligee's employment, or through a labor or trade union, or ☐ securing a private health insurance policy, accepted by the obligor and obligee or as approved by the Court, which names the child/children as beneficiary. Both the obligor and obligee shall be provided with a copy of the insurance policy, the insurance card, the name of the health insurance provided and the number of the insurance policy regarding dependent benefits/coverage.

Name of Health Insurance Provider(s)          Policy Number(s)          Telephone Numbers

_____          _____          _____

_____          _____          _____

**It is further ordered that:**

The Obligor must notify the Court (Clerk of the Circuit Court), the other party (obligee), and if a party is receiving child and spouse support under Article X of the Illinois Public Aid Code, the IDPA, **in writing, within seven (7) days:**

- the name, address and phone number of any new employer;
- any new residential, mailing address or telephone number; and
- the policy name and identifying number(s) of health insurance coverage available.

The obligor shall submit a written report of termination of employment and of new employment, including name and address of the new employer, to the Clerk of the Court and the obligee within 10 days. Obligor and obligee shall advise each other of a change of residence within 5 days except when the Court finds the physical, mental or emotional health of a party or that of a minor child, or both, would be seriously endangered by disclosure of the party's address. An obligee receiving payments through income withholding shall notify in writing the Clerk of the Court and the State Disbursement Unit within 7 days, of a change in residence. The obligor and obligee shall report to the Clerk of the Court any change of information included in the Child Support Data Sheet (Exhibit 1) within 5 business days of such change.

**JOEL A. KAGANN, CLERK OF THE EIGHTEENTH JUDICIAL CIRCUIT COURT ©
WHEATON, ILLINOIS 60189-0707**

CASE# 97D285

## ADDITIONAL CONDITIONS OR FINDINGS

☐ Child Support payment amount deviates from the amount required by statutory minimum guidelines. The amount of Support that would have been required under the guidelines is $

Reason for deviation: _____

_____

_____

_____

☑ OTHER  Support payments made through Court Ordered 503(g) trust.

_____

_____

_____

_____

The "Child Support Data Sheet" attached hereto, as EXHIBIT 1 is a part of this order and impounded except as to the parties, Attorneys of Record, Circuit Court Clerk Personnel or any other person deemed interested by the Court, until further Order of this Court.

_____

DATE: 5-13-04          ENTER: _____ Judge

## FAILURE TO OBEY ANY OF THE PROVISIONS OF THIS ORDER MAY RESULT IN A FINDING OF CONTEMPT OF COURT

Name SOSEPH E BIRVETT

DuPage Attorney No.: 50000 PRO SE ☐

Attorney For: IDPA

Address: 503 N. CountyFarm Rd

City/State/Zip: Wheaton, IL 60187

Telephone: _____

Reviewed and approved as to form

_____
Deputy Circuit Clerk
DuPage County Circuit Court Clerk
Child Support Division

Date: 5-10-04

Donna Roberts                                          September 4, 2006
1515 Tamiami Trail South
Suite 4
Venice, Fl. 34292

RE: Re v. Re  Case No. 97-D-285
    Children Trust Fund and 503g Trust

Ms. Roberts:

I have prepared this letter to bring to your attention to
several issues that relate to the trusts under your authority
as trustee.

The first issue relates to the disbursements made by you from
the Re Children's Trust Fund.  Enclosed is a court order issued
on October 2, 2001, stating that the funds, "May Not Invade
Children's Trust".  This order refers to the three seperate
children's trust funds because the 503g trust was not in existence
at the time of that court order.  What was your basis for invading
the children's trust funds?  I am certain that either Mrs. Re,
George Vosicky, the prior trustee, or even Pat deRosset of the
States Attorneys office, made you aware of the court order.  The
order was written by Mrs. Re and signed by Judge Elsner in
DuPage County, Illinois.

Next, I have enclosed a court order signed on February 16,
2004 by Judge Equi stating that no medical bills or medical
insurance premiuns incurred prior to the entry of the judgment of
dissolution of the marriage which occurred in 2002 are to be paid
from trusts.  Mrs. Re has sole responibility for these medical
bills not the trusts.  I have enclosed a copy of the order.
Refer to page two, paragraph two.  Medical bills prior to 2002
are specifically excluded.

In your accounting for the Children's Trusts you indicate the
following entry, "Rosemarie Re – Reimbursement for medical expenses
for Amanda, Randall II and Ruessell Re from 1997 to 200 paid by
Rosemarie Re per approval of prior trustee, George Vosicky".
Could you send me a copy of the approval given by George Vosicky?

Lastly, in your accounting you appear to make double payments
for child support.  The ordered payments were for $700.00/month
for two child not $700.00 per child.  Please clarify if I am
misreading the accounting that you provided me.

Please respond to me at the address below.  Thank you for
your assistance and cooperation on these issues.

Sincerely,

Randall Re
Reg. No. 14617-424
FCI Milan
P.O. Box 1000
Milan, Mi. 48160

E x "N"